478 S.E.2d 280

**The STATE, Respondent,**

v.

**Bobby Joe WALKER, Appellant.**

No. 24530.

Supreme Court of South Carolina.

Heard Sept. 18, 1996.

Decided Nov. 18, 1996.

Rehearing Denied Dec. 5, 1996.

---

258

Deputy Chief Attorney Joseph L. Savitz, III, of South Carolina Office of Appellate Defense, Columbia, for Appellant.

Attorney General Charles Molony Condon, Assistant Deputy Attorney General Donald J. Zelenka, Assistant Attorney General Charles F. Reid, Columbia, Solicitor George M. Ducworth, Anderson, all for Respondent.

TOAL, Acting Chief Justice:

Arguing that he was entitled to a charge on voluntary manslaughter, Bobby Joe Walker appeals his conviction for murder. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

Judy Walker ("Victim") was killed when her husband Bobby Joe Walker ("Walker") shot her in the head. Walker himself testified and gave a description of how the killing occurred.

He said Victim was angry with him over a family matter. He described what occurred next:

> When I walked in, I says,—she started up again about it, and I said, Judy, please don't do this to us; I did not have nothing to do with it, and whenever she—she was standing as far away from me as she could and facing the dryer and I seen there wasn't going to be no talking to her about it and convincing her that I did not have anything to do with that incident at the hospital, and my intentions was to get that biggest gun out of my left back pocket and put it on a shelf above the washer and dryer, and whenever I came out with the gun, she was still fussing this whole time, and whenever I come out, I knowed I had to get out in the back yard. My intentions was to get those fish, get out in that back yard and just get away from her and let her cool off and let everything simmer down. Whenever I pulled that gun out, I had it in my left hand. I got it out of my back left pocket, and as soon as I come up to go to the shelf above the washer and dryer, she took off at me very, very fast and when I throwed up to block her, the gun went off. I believe she run into the gun and when the gun went off, she fell backwards, and I couldn't believe what had happened.

On cross-examination, he described the incident in the following way:

> But whenever I come back into the room, I noticed she wasn't in the kitchen and I come to the washroom cause I was going to get the fish. Done had the gun off my mind except when I come in there. I wanted to get—get my fish and she started up again and I said, Judy, please don't do this . . .; I didn't have nothing to do with it. And whenever she—whenever I come out of the—my back pocket with this gun, the Glock, as soon as I done this, she took off for me and I thought she was going to hit me and I throwed both hands up.

When asked how the gun went off against Victim's mouth such that the bullet shot through her eye and out her head, Walker replied, "Well, when she run into it, I guess she bounced off of it some and the gun probably come up and that's when it went off. Maybe she grabbed at the gun. I don't know that. If she grabbed the gun I don't know. I throwed it up in defense of her coming at me."

At trial, the jury was instructed on murder, involuntary manslaughter, and accident. The jury found Walker guilty of murder.[1] He was sentenced to life imprisonment and five years. Walker appeals, arguing that the trial court erred by refusing to instruct the jury on voluntary manslaughter. We disagree.

## LAW/ANALYSIS

Voluntary manslaughter is the unlawful killing of a human being in sudden heat of passion upon sufficient legal provocation. *State v. Kornahrens*, 290 S.C. 281, 350 S.E.2d 180 (1986), *cert. denied*, 480 U.S. 940, 107 S.Ct. 1592, 94 L.Ed.2d 781 (1987). Heat of passion alone will not suffice to reduce murder to voluntary manslaughter. Both heat of passion and sufficient legal provocation must be present at the time of the killing. *State v. Tyson*, 283 S.C. 375, 323 S.E.2d 770 (1984), *cert. denied*, 471 U.S. 1006, 105 S.Ct. 1873, 85 L.Ed.2d 165 (1985). The sudden heat of passion, upon sufficient legal provocation, which mitigates a felonious killing to manslaughter, while it need not dethrone reason entirely, or shut out knowledge and volition, must be such as would naturally disturb the sway of reason, and render the mind of an ordinary person incapable of cool reflection, and produce what, according to human experience, may be called an uncontrollable impulse to do violence. *State v. Byrd*, 323 S.C. 319, 474 S.E.2d 430 (1996).

The court did not err in refusing to instruct the jury on voluntary manslaughter because there was not evidence of sudden heat of passion upon sufficient legal provocation. Viewed in the light most favorable to the defendant, the evidence reveals that a witness heard a "scuffle"; Victim was angry at Walker; Victim and Walker had had a bad relationship; and Victim charged at Walker. These circumstances are insufficient to warrant a charge on voluntary manslaughter. There was no evidence presented that Walker was overcome by a sudden heat of passion as would produce "uncontrollable impulse to do violence."

---

1. The jury was also instructed on a firearm charge. Walker was found guilty on this charge as well.

To the contrary, not only was he *capable* of "cool reflection," he *demonstrated* cool reflection. He testified, "When I walked in, I says,—she started up again about it, and I said, Judy, please don't do this to us; I did not have nothing to do with it...." Furthermore, "I seen there wasn't going to be no talking to her about it and convincing her that I did not have anything to do with that incident at the Hospital...." In fact, according to his testimony, Walker was the one trying to diffuse the tension. He walked away from the incident and wanted to "get away from her and let her cool off and let everything simmer down." Because there was no evidence presented that Walker acted in sudden heat of passion, he was not entitled to a charge on voluntary manslaughter.

### CONCLUSION

Based on the foregoing, Walker's conviction is **AFFIRMED.**

MOORE, WALLER, and BURNETT, JJ., and JAMES W. JOHNSON, Jr., Acting Associate Justice, concur.