595 S.E.2d 872

The STATE, Respondent,

v.

William Larry CHILDERS, Jr., Appellant.

No. 3777.

Court of Appeals of South Carolina.

Heard March 11, 2004.
Decided April 12, 2004.
Rehearing Denied May 21, 2004.

Assistant Appellate Defender Robert M. Dudek, Office of Appellate Defense, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Assistant Attorney General

Melody J. Brown, all of Columbia; and Solicitor Warren Blair Giese, of Columbia, for Respondent.

HEARN, C.J.:

William Larry Childers, Jr. was convicted of murder, assault and battery of a high and aggravated nature (ABHAN), and discharging a firearm into a dwelling. The trial judge imposed a sentence of life imprisonment for murder and concurrent terms of ten years imprisonment each for ABHAN and discharging a firearm. Childers appeals. We affirm in part, reverse in part, and remand.

## FACTS

Childers was estranged from the victim, his former live-in girlfriend, at the time of the victim's death. Though the victim and her children were living with her mother, Childers testified the couple was attempting to reconcile.[1] The victim's sister testified that on October 14, 2000, Childers came to the house to visit the victim and return some CDs. After the victim refused to leave the house, the sister testified Childers "started getting mad" and threw the CDs before he left. The victim's sister further testified that she, her ex-husband, and the victim saw Childers at a turkey shoot later that night.

At approximately 3:00 a.m. the following morning, October 15, 2000, the victim's brother testified he called the police because he saw Childers outside of the house. Police arrived at the scene but did not find anyone in the vicinity. The victim's brother testified that, shortly after the police left, he heard gunshots and ran outside, where he "[saw] Larry Childers go across the yard."

The victim's sister testified that she, her ex-husband, and the victim returned to her mother's home from the turkey shoot in the early morning hours of October 15th and stood in the yard talking. The sister testified that her ex-husband suddenly said he saw Childers with a gun right before she heard gunshots. Childers shot the victim twice, killing her. The sister testified Childers then shot at her once before he

---

1. The victim's sister disputes this, testifying that the victim was living with her mother until she could evict Childers from her home.

fired a shot into the house. The sister's ex-husband corroborated her testimony.

Childers testified to a different version of the evening's events. Childers stated he and the victim had been involved in a serious relationship and that they had only been estranged for eight or nine days before the shooting. Childers admitted that he saw the victim at the turkey shoot, and he claimed that the victim indicated she was willing to talk to him, but he wanted to talk to her privately, not at the turkey shoot. After leaving the turkey shoot, Childers testified that he drove around for a while before going to a friend's house that was near the home of the victim's mother. Childers walked to the mother's home because he wanted to "try to get [the victim] to come outside and talk to [him] a minute because [they had] fussed, she had got mad with [him] earlier and [he] wanted to clear that up." Childers testified that he brought a loaded gun with him in case he encountered stray dogs during his walk.

Childers testified that when he arrived at the house, he saw the victim, her sister, and her sister's ex-husband in the yard. As he walked toward them, Childers testified that the ex-husband shot at him. Childers said he immediately fired back and ran away.

After the jury had been selected, the public defender, who was a former assistant solicitor, informed the trial judge that he had prosecuted Childers approximately ten years earlier and that he had performed some legal work for the victim's brother approximately six years before the trial. Defense counsel informed the judge that Childers did not "feel comfortable at this point with my previous relationship with the [S]tate and as a prosecutor against him." Childers then told the judge, "I want him [re]moved because he prosecuted me." The trial judge declined to relieve defense counsel, stating there was no "built-in conflict," as Childers' prior trial was several years earlier and defense counsel did not remember prosecuting him. The trial judge did not specifically address the fact that defense counsel had previously done legal work for the victim's brother.

At the close of trial, defense counsel asked for charges on self defense, involuntary manslaughter, and voluntary man-

slaughter. The trial judge agreed to charge self defense and involuntary manslaughter, but refused to charge voluntary manslaughter. The jury ultimately returned with guilty verdicts on murder, ABHAN, and discharging a firearm into a dwelling, and Childers received an aggregate sentence of life imprisonment. Childers appeals.

## LAW/ANALYSIS

### I. Request to Relieve Defense Counsel

■ Childers argues the trial judge erred in refusing his request to relieve defense counsel based on counsel's prosecution of him in the past and counsel's previous representation of the victim's brother. We disagree.

■ "A motion to relieve counsel is addressed to the discretion of the trial judge and will not be disturbed absent an abuse of discretion." *State v. Graddick*, 345 S.C. 383, 385, 548 S.E.2d 210, 211 (2001) (citation omitted). The mere possibility that defense counsel may have a conflict of interest is insufficient to impugn a criminal conviction. *See Langford v. State*, 310 S.C. 357, 359, 426 S.E.2d 793, 795 (1993) (citing *Cuyler v. Sullivan*, 446 U.S. 335, 350, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)).

### A. Defense counsel as former prosecutor

When defense counsel revealed to the court that he had successfully prosecuted Childers ten years earlier, he stated that he had no independent recollection of the case. In fact, he only learned of the prosecution when the solicitor checked the files and revealed to him that he was the assistant solicitor in charge of Childers' prior case.

While South Carolina courts have never addressed whether an attorney who formally prosecuted the defendant can later serve as appointed counsel for the defendant in a subsequent case, other jurisdictions have addressed the issue. In *State v. Cobbs*, 221 Wis.2d 101, 584 N.W.2d 709 (1998), defense counsel had previously prosecuted the defendant when he was working in the district attorney's office. The Wisconsin Supreme Court found there was no actual conflict of interest or serious potential conflict of interest. *Id.* at 711. The court pointed

out that "[t]here were no competing loyalties in this case," nor was it "a situation where defense counsel has appeared for and represented the State as a prosecutor in prior proceedings involving the *same case* in which he or she currently represents the defendant[.]" *Id.* (Emphasis in original.) *See also People v. Nunez,* 186 A.D.2d 764, 589 N.Y.S.2d 64 (N.Y.App. Div.1992) (finding that even though defense counsel had formerly been a solicitor and even though she had only visited defendant twice during his incarceration, the trial court did not err in failing to substitute counsel because there was no irreconcilable conflict of interest). Other jurisdictions have even found no conflict despite defense counsel's actual involvement in the prosecution of the same case against his eventual client. *See e.g., State v. King,* 447 So.2d 395 (Fla.Dist.Ct.App. 1984) (finding defendant's counsel need not be disqualified in the revocation of probation case even though he had been the prosecuting attorney for the underlying charges because the alleged violation of probation was factually unrelated to the prior offense and there was no actual prejudice shown); *Brown v. State,* 270 Ind. 399, 385 N.E.2d 1148 (1979) (finding no abuse of discretion where trial judge denied a mistrial motion that was made after it was discovered that defense counsel, who was a previous prosecutor, had several informations against the defendant).

In this case, aside from the fact that defense counsel had prosecuted Childers ten years earlier, there was no showing of any competing loyalties or actual conflict. *See People v. Abar,* 99 N.Y.2d 406, 757 N.Y.S.2d 219, 786 N.E.2d 1255 (2003) (stating that there was no evidence the public defender obtained information about defendant through her prior employment as an assistant district attorney even though she had prosecuted the defendant in the past). When there is no actual conflict, the defendant must demonstrate he was prejudiced by the attorney's representation of him. *Cf. Thomas v. State,* 346 S.C. 140, 145 n. 2, 551 S.E.2d 254, 257 n. 2 (2001) ("Petitioner does not have to demonstrate prejudice if there is an actual conflict of interest."). Here, there was no showing of prejudice. Defense counsel testified that he was ready and prepared to defend Childers' case, and other than complaining that his attorney had not met with him frequently enough prior to trial, Childers did not articulate any reason he would

be prejudiced by being represented by his former prosecutor. Thus, we find no error in the trial judge's refusal to relieve defense counsel.

## B. Defense counsel's representation of witness

■ Childers also argues defense counsel should have been relieved based on his past representation of the victim's brother. While defense counsel mentioned he had "previously done some work" for the brother approximately six years before Childers' trial, the trial judge did not rule upon whether this prior representation was grounds for a conflict.[2] As such, this issue is not preserved for review by this court. *See State v. Perez*, 334 S.C. 563, 566–67, 514 S.E.2d 754, 755 (1999) (holding an issue must be both raised to and ruled upon by the trial judge to be preserved for appellate review); *see also State v. Graddick*, 345 S.C. 383, 386, 548 S.E.2d 210, 211 (stating that it was defendant's burden to show satisfactory cause for removing counsel).

## II. Jury Charge

■ Next, Childers argues the trial judge erred by declining to charge the jury on the law of voluntary manslaughter. We agree.

■ The evidence presented at trial determines the charged jury instruction. *State v. Lee*, 298 S.C. 362, 364, 380 S.E.2d 834, 836 (1989). "The purpose of a jury instruction is to enlighten the jury and to aid it in arriving at a correct verdict." *State v. Blurton*, 352 S.C. 203, 207, 573 S.E.2d 802, 804 (2002). "When determining whether a defendant is entitled to a voluntary manslaughter charge, the court views the facts in the light most favorable to the defendant." *State v. Grubbs*, 353 S.C. 374, 381, 577 S.E.2d 493, 497 (Ct.App.2003).

■ "Voluntary manslaughter is the unlawful killing of a human being in sudden heat of passion upon sufficient legal provocation." *State v. Locklair*, 341 S.C. 352, 360, 535 S.E.2d

---

2. At trial, Childers never requested defense counsel be relieved because of counsel's past legal representation of the victim's brother. Rather, Childers' complaint about defense counsel stemmed from counsel's prior prosecution of him and his perception that counsel had not met with him frequently enough prior to trial.

420, 424 (2000). "To warrant a court's eliminating the offense of manslaughter, it should very clearly appear that there is no evidence whatsoever tending to reduce the crime from murder to manslaughter." *State v. Cole,* 338 S.C. 97, 101, 525 S.E.2d 511, 513 (2000).

Here, there was evidence that Childers only fired his gun after he was shot at by the victim's ex-brother-in-law. In *State v. Penland,* 275 S.C. 537, 540, 273 S.E.2d 765, 766 (1981), our supreme court found that a voluntary manslaughter charge was warranted "based upon a statement given by appellant following the shooting, which created a jury issue on provocation and heat of passion due to the evidence of the pointing of the gun at the appellant and the subsequent struggle." Thus, if the pointing of a gun and subsequent struggle justifies a voluntary manslaughter charge, so too would the pointing of a gun and subsequent firing of that gun. Although it was the victim's brother-in-law, and not the victim herself, who allegedly shot at and thereby provoked Childers, the doctrine of transferred intent justifies a voluntary manslaughter charge as to the killing of the victim. *See State v. Gandy,* 283 S.C. 571, 573, 324 S.E.2d 65, 67 (1984) *implicitly overruled on other grounds by Casey v. State,* 305 S.C. 445, 409 S.E.2d 391 (1991) ("Where a defendant intends to kill or seriously injure one person, but kills another, a defendant may be found guilty of murder or manslaughter.") Accordingly, Childers' conviction for murder is reversed and remanded.

## CONCLUSION

We find no error in the trial judge's refusal to relieve counsel; however, the trial judge did err by not charging the jury on voluntary manslaughter. Therefore Childers' convictions for ABHAN and discharging a firearm into a dwelling are **AFFIRMED,** and his conviction for murder is **REVERSED and REMANDED.**

**AFFIRMED IN PART, REVERSED IN PART, and REMANDED.**

ANDERSON and BEATTY, JJ., concur.