645 S.E.2d 233

**The STATE, Respondent/Petitioner,**

v.

**William Larry CHILDERS, Jr., Petitioner/Respondent.**

**No. 26319.**

Supreme Court of South Carolina.

Heard Dec. 6, 2006.

Decided April 23, 2007.

Rehearing Denied June 7, 2006.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Assistant Attorney General Melody J. Brown, and Solicitor Warren Blair Giese, all of Columbia, for Respondent/Petitioner.

Deputy Chief Attorney for Capital Appeals Robert M. Dudek, of South Carolina Commission on Indigent Defense, Division of Appellate Defense, of Columbia, for Petitioner/Respondent.

Justice BURNETT.

We granted both parties' petitions for writ of certiorari to review the Court of Appeals' decision in *State v. Childers,* 358 S.C. 614, 595 S.E.2d 872 (Ct.App.2004). We affirm in part and reverse in part.

## FACTUAL/PROCEDURAL BACKGROUND

On October 14, 2002, William Larry Childers visited his former live-in girlfriend (the victim) at her mother's home.[1] According to the victim's sister, Childers became upset during the meeting because the victim would not leave the house to talk to him. Later that night, Childers saw the victim along with her sister and her sister's ex-husband at a turkey shoot and a confrontation ensued.

About 3:00 a.m. on October 15, the victim's brother returned to his mother's home and after hearing footsteps in a wooded area near the home, he determined Childers was prowling around the area. The brother immediately called 911, but the police were unable to locate Childers when they arrived. The brother testified he was awakened approximately thirty minutes later by the sound of gunshots in the front yard and when he went outside, he saw "Childers go across the yard."

According to the victim's sister, she along with her ex-husband and the victim were standing in the victim's mother's yard talking after the turkey shoot when Childers suddenly appeared in the yard and shot the victim twice, at close range, in the head. The victim's sister said she immediately ran toward the house and Childers fired two more shots at her. The victim's former brother-in-law testified he attempted to warn the victim and his ex-wife that Childers was approaching them, but Childers shot the victim in the back of the head before he could do so.

According to Childers, he went to a friend's home, which was close to the victim's mother's home, after the turkey shoot. Childers testified he then decided to walk to the victim's mother's home to talk to the victim. He testified he carried a loaded gun with him to protect himself from stray dogs during the walk, and as he approached the group standing in the yard, he had the gun in his coat pocket. Childers stated the victim's former brother-in-law shot at him first. He returned fire, and in doing so, he shot the victim. Childers also testified he did not visit the victim that night with the

---

1. For a more complete recitation of the facts, see *State v. Childers*, 358 S.C. 614, 595 S.E.2d 872 (Ct.App.2004).

intention of shooting anyone, but he fired because he was fired upon.

After the jury had been selected, Childers requested the trial judge relieve his defense counsel, but the trial court denied this request. At the end of trial, defense counsel requested a jury charge on voluntary manslaughter. The trial judge refused to charge voluntary manslaughter, but charged murder, involuntary manslaughter, and self-defense. Childers was convicted of murder, assault of a high and aggravated nature,[2] and discharging a firearm into a dwelling. He received a life sentence for murder and concurrent terms of ten years' imprisonment for each of the remaining two convictions.

Childers appealed his convictions. The Court of Appeals upheld the trial judge's refusal to relieve defense counsel. The Court of Appeals reversed and remanded Childers' murder conviction after finding the trial judge erred in failing to give a jury charge on voluntary manslaughter. *Childers*, 358 S.C. at 614–21, 595 S.E.2d at 872–76.

## *CHILDERS' ISSUE*

Did the Court of Appeals err in finding the trial judge did not abuse his discretion by denying Childers' request to relieve defense counsel?

## *LAW/ANALYSIS*

Childers argues his defense counsel should have been relieved because defense counsel, while employed as an assistant solicitor, had previously prosecuted him on an unrelated charge.[3] We disagree.

---

**2.** The Court of Appeals' opinion incorrectly referred to this conviction as assault and battery of a high and aggravated nature. *Childers*, 358 S.C. at 615, 618, 621, 595 S.E.2d at 873–74, 876.

**3.** Childers also argues the trial judge erred in denying his request to relieve counsel because counsel had previously represented the victim's brother. This issue is not preserved for review because it was not raised at trial. *See State v. Hicks*, 330 S.C. 207, 216, 499 S.E.2d 209, 214 (1998) (to be preserved for appeal, an issue must be raised to and ruled upon by the trial judge).

■ A motion to relieve counsel is addressed to the discretion of the trial judge and will not be disturbed absent an abuse of discretion. *State v. Gregory*, 364 S.C. 150, 152, 612 S.E.2d 449, 450 (2005); *State v. Graddick*, 345 S.C. 383, 385, 548 S.E.2d 210, 211 (2001). The movant bears the burden to show satisfactory cause for removal. *Gregory*, 364 S.C. at 152, 612 S.E.2d at 450; *Graddick*, 345 S.C. at 386, 548 S.E.2d at 211.

Childers asked the trial judge to relieve defense counsel based on defense counsel's prior prosecution of him and his perceived lack of defense counsel's trial preparation. Defense counsel told the trial judge he was ready and prepared to go to trial and he had no independent recollection of prosecuting Childers. Childers failed to show his counsel had any divided loyalties or an actual conflict of interest. *See Gregory*, 364 S.C. at 152, 612 S.E.2d at 450 ("An actual conflict of interest occurs where an attorney owes a duty to a party whose interests are adverse to the defendant's."); *see also People v. Abar*, 290 A.D.2d 592, 736 N.Y.S.2d 155 (N.Y.App.Div.2002) (finding there was no conflict of interest where defendant's public defender had previously prosecuted him on unrelated charges when she was employed as an assistant district attorney); *State v. Cobbs*, 221 Wis.2d 101, 584 N.W.2d 709 (1998) (concluding there was no actual or serious potential conflict where defendant's counsel had previously prosecuted defendant while working in the district attorney's office). The Court of Appeals correctly found the trial judge did not abuse his discretion by denying Childers' request to relieve counsel.

## THE STATE'S ISSUE

Did the Court of Appeals err in finding the trial judge improperly denied Childers' request for a voluntary manslaughter charge?

## LAW/ANALYSIS

■ The State argues Childers was not entitled to a voluntary manslaughter charge given the facts of this case. We agree.

▆▆▆▆ Voluntary manslaughter is the unlawful killing of a human being in the sudden heat of passion upon a sufficient legal provocation. *State v. Kornahrens,* 290 S.C. 281, 285–86, 350 S.E.2d 180, 184 (1986). "The sudden heat of passion, upon sufficient legal provocation, which mitigates a felonious killing to manslaughter, while it need not dethrone reason entirely, or shut out knowledge and volition, must be such as would naturally disturb the sway of reason, and render the mind of an ordinary person incapable of cool reflection, and produce what, according to human experience, may be called an uncontrollable impulse to do violence." *State v. Byrd,* 323 S.C. 319, 322, 474 S.E.2d 430, 432 (1996) (internal quotations omitted). Both heat of passion and sufficient legal provocation must be present at the time of the killing to constitute voluntary manslaughter. *State v. Hughey,* 339 S.C. 439, 451, 529 S.E.2d 721, 727 (2000).

▆▆▆▆ The law to be charged must be determined from the evidence presented at trial. *State v. Cole,* 338 S.C. 97, 101, 525 S.E.2d 511, 512 (2000). In determining whether the evidence requires a charge on voluntary manslaughter, this Court must view the facts in the light most favorable to the defendant. Id. at 101, 525 S.E.2d at 512–13. To warrant a court's eliminating the offense of manslaughter, it should very clearly appear that there is no evidence whatsoever tending to reduce the crime from murder to manslaughter. Id.

The Court of Appeals determined the evidence showed that Childers only fired his gun after being fired upon by the victim's former brother-in-law. The Court of Appeals found, although the victim did not provoke Childers, the provocation by her ex-brother-in-law could be transferred to the victim under the doctrine of transferred intent. Based on this analysis, the Court of Appeals concluded Childers was entitled to a voluntary manslaughter charge. *Childers,* 358 S.C. at 621, 595 S.E.2d at 876.

Viewing the evidence in the light most favorable to Childers, this factual scenario is completely void of any evidence supporting a charge of voluntary manslaughter. Childers testified he was provoked by the victim's former brother-in-law and he fired his gun in response to being first shot at by the ex-brother-in-law. Childers' testimony does not support the

contention that the killing was in the sudden heat of passion upon sufficient legal provocation by the victim because, contrary to the Court of Appeals' decision, the overt act that produces the sudden heat of passion must be made by the victim. *See State v. Lowry*, 315 S.C. 396, 399, 434 S.E.2d 272, 274 (1993) ("[W]hen death is caused by the use of a deadly weapon, the opprobrious words must be accompanied by the appearance of an assault-by some overt, threatening act-which could have produced the heat of passion."); *State v. Locklair*, 341 S.C. 352, 363, 535 S.E.2d 420, 425 (the defendant was not entitled to a voluntary manslaughter charge because the "overt act was made by a third party, not the deceased, and South Carolina has not recognized sufficient legal provocation from a third party that can be transferred to the victim."); *State v. Tucker*, 324 S.C. 155, 171, 478 S.E.2d 260, 269 (1996) ("The provocation must come from some act of or related to the victim in order to constitute sufficient legal provocation."). Because there is no evidence whatsoever tending to reduce the crime from murder to voluntary manslaughter, the Court of Appeals erred in finding the trial judge erroneously failed to give a voluntary manslaughter charge.

## CONCLUSION

For the foregoing reasons, we uphold Childers' convictions.

**AFFIRMED IN PART; REVERSED IN PART.**

WALLER, J., concurs. TOAL, C.J., concurring in result only in a separate opinion. PLEICONES, J., dissenting in a separate opinion in which MOORE, J., concurs.

Chief Justice TOAL.

I concur in the result reached by the majority, but I write separately because I would resolve the case on different grounds. Like the majority, I believe the court of appeals incorrectly determined that the evidence presented at trial entitled the defendant to a voluntary manslaughter charge. In my view, however, the concept of transferred intent has little relevance to the outcome of the instant case.

As this Court's precedent provides, voluntary manslaughter is the unlawful killing of a human being in a sudden heat of

passion upon sufficient legal provocation. *State v. Walker,* 324 S.C. 257, 260, 478 S.E.2d 280, 281 (1996). Voluntary manslaughter mitigates an otherwise felonious killing to manslaughter, and while the elements of passion and provocation need not be of such a degree so as to dethrone reason entirely, or shut out knowledge and volition, they must "be such as would naturally disturb the sway of reason, and render the mind of an ordinary person incapable of cool reflection, and produce what, according to human experience, may be called an uncontrollable impulse to do violence." *Id.* (*citing State v. Byrd,* 323 S.C. 319, 474 S.E.2d 430 (1996)). When determining whether a defendant is entitled to a voluntary manslaughter charge, the court must view the facts in the defendant's favor. *Byrd,* 323 S.C. at 321, 474 S.E.2d at 431.

The defendant's own narrative is instructive. According to the defendant, the events leading up to the fatal shooting began with a minor altercation early in the evening between the defendant, his live-in girlfriend (from whom he was separated seven days earlier), and his girlfriend's ex-brother-in-law. The defendant testified that he left the scene of the altercation, visited several other destinations, and eventually decided to attempt to reconcile with his girlfriend at her mother's house at approximately 3:30 in the morning. The defendant believed it prudent to leave his car nearly two miles away from the house and approach the house from the rear, and as he approached the house, the defendant testified that he observed his girlfriend, his girlfriend's sister, and the sister's ex-husband outside the home. The defendant alleges that as he approached the trio, the sister's ex-husband fired a weapon at him. According to the defendant, he used his own gun to return fire, and then retreated from the property while firing multiple times over his shoulder.

This factual scenario is completely void of any evidence remotely supporting a charge of voluntary manslaughter. Voluntary manslaughter, by definition, requires a criminal intent to do harm to another. But according to the defendant's story, he had no criminal intent whatsoever.

If, as he suggests, the defendant returned fire in a panic for his life, surely the defense of self-defense would be appropriate. Notably, this was charged by the trial court. Similarly,

the trial court charged the jury on the law of involuntary manslaughter; perhaps because it was possible for the jury to believe that the defendant's initial returning of fire was justified, but ultimately find that the defendant was criminally reckless in firing multiple times over his shoulder as he retreated. Without any evidence supporting the view that the defendant fired the fatal shots while under an "uncontrollable impulse to do violence," the trial court properly declined to charge the law of voluntary manslaughter to the jury.[4]

In support of their holding that the defendant was entitled to a voluntary manslaughter charge, the court of appeals relied on this Court's holding in *State v. Penland*, 275 S.C. 537, 540, 273 S.E.2d 765, 766 (1981). As the court of appeals noted, that case arguably stands for the proposition that a jury issue on the voluntary manslaughter element of heat of passion can be created in a case similar to the instant case.

*Penland* cannot be so broad. Read literally, the opinion seems to impermissibly blend the concept of voluntary manslaughter with the defense of self-defense. The opinion provides no substantial factual background for the case, and no description of the events leading up to the apparently fatal incident. To the extent *Penland* stands for the proposition that a person who simply defends himself while in fear for his life is entitled to a voluntary manslaughter charge, the case should be overruled.

For the foregoing reasons, I would reverse the court of appeals' decision and reinstate the defendant's murder conviction.

Justice PLEICONES.

I agree that there was no abuse of discretion in the trial court's denial of Childers' motion to relieve his trial counsel, and therefore join that part of the majority's opinion. I respectfully dissent, however, from that part of the decision

---

4. Tellingly, the fatal shots consisted of two gunshot wounds to the victim's head. At trial, the State's medical expert testified that powder marks around both wounds suggested that the shots were administered at a close range. Though the implications of this evidence contradict the defendant's account of the events, we must believe the defendant when determining jury charges.

which reverses the Court of Appeals' holding that the trial judge committed reversible error in denying Childers' request for a voluntary manslaughter charge.

The majority reverses the voluntary manslaughter holding, finding the Court of Appeals misapplied the doctrine of transferred intent. Aside from the fact that this issue is not before the Court,[5] as explained below, this case represents a classic claim of transferred intent.

"Criminal liability is normally based upon the concurrence of two factors, 'an evil meaning mind [and an] evil doing hand.'" *United States v. Bailey,* 444 U.S. 394, 402, 100 S.Ct. 624, 62 L.Ed.2d 575 (1980). Thus, in a homicide case, the law is concerned with the killer's state of mind, not with the identity of the victim. *State v. Fennell,* 340 S.C. 266, 531 S.E.2d 512 (2000). As the *Fennell* court explained, "[A] defendant may be found guilty of murder or manslaughter in a case of bad or mistaken aim under the doctrine of transferred intent. In the classic case, the defendant intends to kill or seriously injure one person, but misses that person and mistakenly kills another." *Id.* at 272, 531 S.E.2d at 515.

Thus, the critical question was Childers' mental state at the time he shot. If there is evidence that he fired in the sudden heat of passion upon sufficient legal provocation, it matters not that his aim was poor. *State v. Fennell, supra.* Here, Childers testified that his sudden heat of passion was aroused when the victim's former brother-in-law shot at him, and that in returning the fire, he mistakenly shot the victim. The majority misapplies the doctrine in order to find no voluntary manslaughter charge was warranted. *See also e.g. State v. Gandy,* 283 S.C. 571, 324 S.E.2d 65 (1984) *overruled on other grounds Casey v. State,* 305 S.C. 445, 409 S.E.2d 391 (1991); *State v. McElveen,* 280 S.C. 325, 313 S.E.2d 298 (1984).[6]

The sole issue before the Court on the State's certiorari is

---

5. The State did not challenge the Court of Appeals transferred intent holding on rehearing and consequently could not, and did not, seek certiorari to review that ruling. An unchallenged ruling by the Court of Appeals, even if erroneous, is the law of the case on certiorari. *E.g., State v. Barroso,* 328 S.C. 268, 493 S.E.2d 854 (1997).

6. The majority relies on a case where the legal provocation of "A" was used by the defendant to justify his intentional shooting of "B," *State v.*

Whether the Court of Appeals erred by finding the trial judge incorrectly denied Childers' request for a voluntary manslaughter charge when the record shows there is no evidence of heat of passion? [7]

The State's argument rests on its contention that Childers did not present evidence that he was "inflamed by passion" when he returned the brother-in-law's fire. I disagree, and would hold that the jury could have found the "heat of passion" in Childers' testimony that he fired back because he was scared and feared he would be shot at again.

For these reasons, I would affirm the decision of the Court of Appeals.

MOORE, J., concurs.

---

*Locklair,* 341 S.C. 352, 535 S.E.2d 420 (2000), and one where there was simply no legal provocation. *State v. Tucker,* 324 S.C. 155, 478 S.E.2d 260 (1996). In contrast, here the State has conceded legal provocation.

7. "State's Brief of Petitioner" at page 2.