736 S.E.2d 301

The STATE, Respondent,

v.

Devon F. FRAZIER, Appellant.

Appellate Case No. 2010–171626.

No. 5069.

Court of Appeals of South Carolina.

Heard Oct. 30, 2012.

Decided Jan. 2, 2013.

Appellate Defender Breen R. Stevens, of Columbia, for Appellant.

Attorney General Alan M. Wilson, Chief Deputy Attorney General John W. McIntosh, Senior Assistant Deputy Attorney General Donald J. Zelenka, and Assistant Attorney General Alphonso Simon, Jr., all of Columbia; and Solicitor Douglas A. Barfield, Jr., of Lancaster, for Respondent.

THOMAS, J.

Devon F. Frazier appeals his convictions for murder and possession of a firearm during the commission of a violent crime. He argues the trial court committed reversible error in (1) declining to charge self-defense; (2) declining to charge voluntary manslaughter; and (3) charging that malice may be inferred from the use of a deadly weapon. We affirm in part, reverse in part, and remand for a new trial.

## FACTS & PROCEDURAL HISTORY

Frazier shot Jermaine Richardson, "Baldy," in the head at the Pardue Street Apartments in Lancaster around 9:30 pm on March 9, 2007. Baldy and Andre Hood drove to the incident in a blue, four-door Cadillac, Baldy in the driver's seat and Hood in the front passenger's seat. When the police arrived, only Baldy remained in the car, and the front two doors of the car were open. No weapons were recovered. The windows were tinted, and the driver's side window had four bullet holes in it. The window had not shattered because the tint kept it together.

Baldy later died from his wounds, and a Lancaster County grand jury indicted Frazier for murder and possession of a firearm during the commission of a violent crime. The State presented twenty-five witnesses. A number of the witnesses testified Baldy attacked Frazier earlier in the night. They also testified Frazier never calmed down after the attack and immediately made threats to James Ross ("Pop Charlie") that he would kill Baldy and Pop Charlie. Six of the witnesses testified they later saw Frazier walk up to Baldy's car, look in the driver's side window, and shoot into the window three to four times.

Frazier testified he and Baldy were initially friends until they had a falling out. As a result of the decline in their friendship, Baldy initiated an altercation in early February 2007 during which he punched and shot at Frazier, who escaped unharmed. Later that month, they had words during a concert. About a week later, Frazier began seeing Tawanna Stalk. Around that time, he purchased a nine millimeter pistol for protection from Baldy.

Frazier recounted that he arrived at Stalk's apartment at 7:30 pm on the night of the shooting. He brought the gun and

placed it under a chair in the apartment's front room. Stalk, Ayana Parker, and a number of others were also present. Everyone began to smoke marijuana and drink alcohol. An hour later, Pop Charlie knocked on the apartment door. At Pop Charlie's suggestion, Frazier along with two others left the apartment. Frazier testified he did not bring his gun because he was comfortable with the group and did not expect to see Baldy.

The group went to the apartment of Stalk's rear neighbor, Parker, and entered her kitchen. Frazier sold Pop Charlie a blunt, and Frazier then lit his own. Frazier testified that he looked down and, upon looking up, Pop Charlie slapped him, knocking him to the floor. Frazier testified he had not seen Baldy in Parker's apartment, but while he lay on the floor, Baldy jumped on and began to beat him. Frazier passed out from the beating and awoke on the kitchen floor. He testified he looked outside and saw Baldy getting in a car, leaving.

According to Frazier, he did not suffer any bruises or bleeding as a result of the fight. However, he was "mad" and "pissed off," and he asked Pop Charlie why they jumped him. He and Pop Charlie began to argue, and a third party eventually held Frazier back from the argument. Pop Charlie left Parker's apartment, and shortly thereafter, Frazier did as well.

Frazier testified he walked back to Stalk's apartment. He knocked on the door, and Pop Charlie answered. He and Pop Charlie resumed arguing, and they walked into the kitchen. Pop Charlie got a knife, and Frazier grabbed his gun in response, aiming it at Pop Charlie.

Frazier stated he stepped outside to leave, when a friend of his arrived. The friend joined Frazier's argument with Pop Charlie in the doorway of the apartment, and Stalk intervened, eventually separating them.

Frazier testified that the blue Cadillac drove up to the front of Stalk's apartment while he and his friend argued with Pop Charlie. At that time, Frazier was standing on the sidewalk outside Stalk's apartment, with his hands by his side and his gun tucked in his pants. Frazier heard Pop Charlie yell, "There goes your man," and then he heard gunshots behind him. As he turned around, he saw Hood at the passenger side

of the Cadillac, door open, leaning over the car, shooting at him with a rifle. Frazier ran toward and ducked behind the front corner of a Ford Explorer on the sidewalk in front of a next-door apartment. From that position, he stood up and shot back at the blue Cadillac three times.

Frazier testified he first noticed the blue Cadillac when he heard gunshots behind him. He did not know Baldy owned the blue Cadillac, nor did he know Baldy was driving the car. He claimed he did not see anyone other than Hood exit the blue Cadillac, nor did he see anyone else with a weapon. According to Frazier, he did not know Baldy had been shot until the next morning.

Frazier testified six minutes elapsed from the time he awoke on the floor of Parker's kitchen until the shooting began in front of Stalk's apartment.[1] He testified he did not have enough time to calm down between the time he was jumped and the time of the shooting. He also testified he shot at the blue Cadillac to defend himself and because he was still "worked up" about the earlier attack. However, he denied ever threatening Pop Charlie or leaving the area to retrieve a gun.

An investigating officer testified Frazier "initially" told the officer he saw Baldy driving the blue Cadillac earlier "in the area that night" but subsequently changed his story to indicate he knew nothing about the shooting and never saw the car or Baldy that evening.

An expert in trace analysis of gunshot residue introduced tests during trial that revealed "quantities of metal consistent with gunshot residue" on the back of Baldy's right hand. Moreover, the gunshot residue expert explained that it was possible for the residue to end up on Baldy's hands even if he did not shoot a firearm because, when a bullet perforates an object—such as a car window—the lead in the bullet can vaporize and land on either side of the perforated object. The expert could not testify, however, as to whether it was more likely that the residue occurred this way or by Baldy firing a weapon. Investigators also found copper bullet jackets in the vehicle, and the State's bullet expert testified it would not be

---

1. Parker explained that 30 minutes elapsed from the scuffle in her kitchen until *after* Baldy was shot.

impossible for the jackets to separate from the bullets when the bullets went through the tinted window if the gun was shot from inside the car.

After the parties presented their cases, they talked with the trial court about whether to charge self-defense, voluntary manslaughter, and the inference of malice based upon the use of a deadly weapon. The court denied the motions to charge the jury on self-defense and voluntary manslaughter. In declining to charge self-defense, the court reasoned Frazier failed to comply with a duty to retreat by firing back once he ducked behind the Explorer because he was safe at that point and could have returned to Stalk's apartment. Relying on *State v. Childers*, 373 S.C. 367, 645 S.E.2d 233 (2007) (plurality), the court declined to charge voluntary manslaughter for three reasons: (1) no evidence showed Frazier was "under the sway of a prior provocation"; (2) no evidence showed Frazier knew Baldy was in the automobile during the shooting; and (3) the evidence showed Frazier's reason for shooting was not to shoot Baldy but to retaliate to the shots he heard.

The court further charged the jury the following:

Inferred malice may arise also when the deed is done with a deadly weapon, and a revolver pistol is a deadly weapon. This inference regarding malice being inferred from the use of a deadly weapon is simply an evidentiary fact to be considered by you along with the other evidence in this case and you can give it such weight as you decide it should have, if any.

The court reasoned *State v. Belcher*, 385 S.C. 597, 685 S.E.2d 802 (2009), did not preclude the charge because the case did not involve self-defense or voluntary manslaughter.

The jury found Frazier guilty of both murder and possession of a firearm during the commission of a violent crime. He received concurrent sentences of 50 years' imprisonment for murder and 5 years' imprisonment for possession of a firearm. This appeal followed.

## ISSUES ON APPEAL

1. Did the trial court err in declining to charge self-defense?

2. Did the trial court err in declining to charge voluntary manslaughter?

3. Did the trial court err in charging the jury that malice may be inferred from the use of a deadly weapon?

## LAW & ANALYSIS
## I. SELF–DEFENSE

 Frazier contends the trial court erred in declining to charge self-defense because the record contains evidence he was shot at with a rifle from behind, ducked behind the front corner of a nearby vehicle, and shot back at his assailants. He contends evidence shows Baldy was not only a driver but also a gunman himself, Frazier was not in a place of safety when he ducked behind the corner of the Explorer, and Frazier would have exposed himself to further danger if he ran to Stalk's apartment from the Explorer.[2] We agree.

 "If there is any evidence in the record from which it could reasonably be inferred that the defendant acted in self-defense, the defendant is entitled to instructions on the defense, and the trial judge's refusal to do so is reversible error." *State v. Light*, 378 S.C. 641, 650, 664 S.E.2d 465, 469 (2008). Self-defense requires four elements:

(1) the defendant must be without fault in bringing on the difficulty; (2) the defendant must have been in actual imminent danger of losing his life or sustaining serious bodily injury, or he must have actually believed he was in immi-

---

**2.** The State argues Frazier failed to preserve his arguments that (1) Baldy was not simply a driver but also a shooter and (2) Frazier could not return to the apartment without risking further serious injury. We disagree. On the record during the charging stage, Frazier argued evidence existed that "the victim was actually firing the weapon" and that Frazier "was being attacked by the victim and his confederate." Moreover, Frazier argued he was entitled to fire back at the blue Cadillac because he was in an unsafe position. The trial court responded that Frazier could have run to Stalk's apartment, and Frazier disputed that assertion by arguing "he had to expose himself to fire to" run to the apartment. Thus, the arguments have been raised to and ruled upon by the trial court, and they are preserved for review. *See State v. Dickman*, 341 S.C. 293, 295, 534 S.E.2d 268, 269 (2000) (noting an argument on a jury charge is not preserved for appeal if it is not made below); *State v. Johnson*, 333 S.C. 62, 64 n. 1, 508 S.E.2d 29, 30 n. 1 (1998) ("[W]here a party requests a jury charge and, after opportunity for discussion, the trial judge declines the charge, it is unnecessary, to preserve the point on appeal, to renew the request at conclusion of the court's instructions.").

nent danger of losing his life or sustaining serious bodily injury; (3) if his defense is based upon his belief of imminent danger, the defendant must show that a reasonably prudent person of ordinary firmness and courage would have entertained the belief that he was actually in imminent danger and that the circumstances were such as would warrant a person of ordinary prudence, firmness, and courage to strike the fatal blow in order to save himself from serious bodily harm or the loss of his life; and (4) the defendant had no other probable means of avoiding the danger.

*Id.* at 649, 664 S.E.2d at 469. "[C]urrent law requires the State to disprove self-defense, once raised by the defendant, beyond a reasonable doubt." *State v. Wiggins*, 330 S.C. 538, 544, 500 S.E.2d 489, 492–93 (1998).

■■ Here, evidence in the record supports Frazier's contention he had no probable means of avoiding the danger other than to fire upon the blue Cadillac. Frazier testified he fired his weapon because Hood was shooting at him from the car that Baldy was driving. Once the right to fire in self-defense arises, a person is not required to wait until his adversary is on equal terms in order to defend himself. *State v. Starnes*, 340 S.C. 312, 322, 531 S.E.2d 907, 913 (2000). Thus, assuming Frazier satisfied the other elements of self-defense, he was not required to risk serious injury by running toward Stalk's apartment or waiting for his alleged assailants to flank or shoot through the Explorer. *See also id.* (providing one "doesn't have to wait until his assailant gets the drop on him, he has the right to act under the law of self-preservation and prevent his assailant [from] getting the drop on him" (internal quotation marks omitted)); *State v. Jackson*, 227 S.C. 271, 279, 87 S.E.2d 681, 685 (1955) ("[I]t is one's duty to avoid taking human life where it is possible to prevent it even to the extent of retreating from his adversary unless by doing so the danger of being killed or suffering serious bodily harm is increased or it is reasonably apparent that such danger would be increased.").

Moreover, taken in the light most favorable to Frazier, evidence in the record supports the remaining elements of self-defense.

■ First, evidence in the record indicates Frazier was in actual, imminent danger of death or serious bodily injury. No gun was found in the blue Cadillac, but four bullet holes passed through Baldy's car window even though Frazier testified he fired his weapon only three times. Further, the State's expert witnesses explained the gun-shot residue on Baldy's hands and the location of the bullet jackets in the Cadillac could indicate that Baldy fired upon Frazier in addition to Hood. This evidence could reasonably indicate Baldy was a gunman himself.

■ Second, evidence in the record could also reasonably support a finding that Frazier was without fault in bringing on the difficulty. According to Frazier, Baldy returned to the apartment armed after attacking Frazier without cause. Frazier testified he was in an argument with Pop Charlie at that time. But that argument was not the proximate cause of Baldy and Hood's shooting. Frazier and Pop Charlie were not engaged in a physical altercation, and although Frazier's gun was in his pants at the time, nothing in Frazier's story indicates that he was clutching the firearm or that the firearm was visible to Hood or Baldy when he was arguing with Pop Charlie. Frazier testified that when Baldy and Hood fired, his back was to the blue Cadillac, his gun was in his pants, and his hands were not on the weapon. *Cf. State v. Slater*, 373 S.C. 66, 71, 644 S.E.2d 50, 53 (2007) (holding the defendant was not without fault in bringing on the difficulty because the defendant "carried the cocked weapon, in open view, into an already violent attack in which he had no prior involvement" and his "actions, including the unlawful possession of the weapon, proximately caused the exchange of gunfire, and ultimately the death of the victim"). Because there is evidence in the record from which a jury could find Frazier's conduct was not reasonably calculated to bring on the difficulty, as well as evidence supporting the other elements of self-defense, we reverse his convictions and remand for a new trial.

## II. VOLUNTARY MANSLAUGHTER

Frazier contends the trial court erred in declining to charge voluntary manslaughter because evidence showed he fired at Baldy out of anger arising from the initial jumping and in response to shots fired by both Baldy and Hood. We affirm

the trial court's denial of Frazier's request for a voluntary manslaughter charge.

To warrant the court declining to give a manslaughter charge, there must be no evidence whatsoever tending to support the charge. *State v. Starnes*, 388 S.C. at 596, 698 S.E.2d at 608. If there is, the defendant is entitled to the charge. *Id.* In determining whether to give the charge, "the court must view the evidence in the light most favorable to the defendant." *State v. Cottrell*, 376 S.C. 260, 262, 657 S.E.2d 451, 452 (2008).

"Voluntary manslaughter is the intentional and unlawful killing of a human being in sudden heat of passion upon sufficient legal provocation." *State v. Smith*, 391 S.C. 408, 412–13, 706 S.E.2d 12, 14 (2011). "The sudden heat of passion, upon sufficient legal provocation, . . . while it need not dethrone reason entirely, or shut out knowledge and volition, must be such as would naturally disturb the sway of reason, and render the mind of an ordinary person incapable of cool reflection, and produce what, according to human experience, may be called an uncontrollable impulse to do violence." *Childers*, 373 S.C. at 373, 645 S.E.2d at 236 (internal quotation marks omitted). The sudden heat of passion "must cause a person to lose control." *Starnes*, 388 S.C. at 598, 698 S.E.2d at 609. "[I]n determining whether an act which caused death was impelled by heat of passion[, as with manslaughter], or by malice[, as with murder], all the surrounding circumstances and conditions are to be taken into consideration, including previous relations and conditions connected with the tragedy, as well as those existing at the time of the killing." *State v. Pittman*, 373 S.C. 527, 575, 647 S.E.2d 144, 169 (2007).

Here, the record is devoid of any evidence Frazier shot Baldy in a "heat of passion." Frazier testified he was "mad" and "worked up" from the earlier beating. However, despite the earlier incident, Frazier testified he never attacked anyone until fired upon. At that time, he ran to the Explorer, ducked behind it for cover, and then stood and returned fire. Considering the circumstances surrounding the incident, it is clear he shot back as a calculated, strategic move to protect himself. Frazier's story does not establish he fired his weapon in a heat of passion causing an *uncontrollable impulse* to

do violence, and no other evidence in the record could reasonably support such a contention. The trial court properly declined Frazier's request to charge the law on voluntary manslaughter. *See Starnes,* 388 S.C. at 599, 698 S.E.2d at 609 ("A person may act in a deliberate, controlled manner, notwithstanding the fact that he is afraid or in fear. Conversely, a person can be acting under an uncontrollable impulse to do violence and be incapable of cool reflection as a result of fear. The latter situation constitutes sudden heat of passion, but the former does not.... Turning to the facts of this case, viewing the evidence in the light most favorable to Appellant, there is no evidence to support a voluntary manslaughter charge.... While ... Appellant was in fear, there is no evidence Appellant was out of control as a result of his fear or was acting under an uncontrollable impulse to do violence. The only evidence in the record is that Appellant deliberately and intentionally shot Jared and Bill and that he either shot the men with malice aforethought or in self-defense.").

## III. INFERRED MALICE

Frazier argues the trial court erred in permitting an inference of malice based upon his use of a firearm under *Belcher.* We agree.

■ As said above, evidence in the record could reasonably support Frazier's claim of self-defense. Thus, the trial court erred in charging that malice may be inferred from the use of a deadly weapon. *See Belcher,* 385 S.C. at 612, 685 S.E.2d at 810 ("[W]here evidence is presented that would reduce, mitigate, excuse or *justify* a homicide ... caused by the use of a deadly weapon, juries shall not be charged that malice may be inferred from the use of a deadly weapon."); *State v. Dickey,* 394 S.C. at 499, 716 S.E.2d at 101 ("A person is *justified* in using deadly force in self-defense when....").

## IV. CONCLUSION

We affirm the denial of Frazier's motions for charges on voluntary manslaughter.[3] We reverse the denial of Frazier's

---

3. A recurring issue throughout this case has been whether Frazier was entitled to a castle doctrine charge. However, we decline to address that issue because we reverse for a new trial on the self-defense issue.

238

motion for a charge on self-defense and against a charge on malice. Thus, we remand for a new trial on the murder and firearm convictions.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

HUFF and GEATHERS, JJ., concurring.

*See Belcher,* 385 S.C. at 613 n. 11, 685 S.E.2d at 811 n. 11 (declining to address a remaining issue because the court reversed and remanded for a new trial due to an erroneous jury charge).