**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Jason Barry Bell, Appellant.

Appellate Case No. 2023-001326

———————————

Appeal From Dorchester County
Heath P. Taylor, Circuit Court Judge

———————————

Unpublished Opinion No. 2026-UP-131
Heard February 12, 2026 – Filed March 18, 2026

———————————

**AFFIRMED**

———————————

Deputy Chief Attorney for Capital Appeals David Alexander, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Deputy Attorney General Donald J. Zelenka, Senior Assistant Deputy Attorney General Melody Jane Brown, Assistant Attorney General R. Brandon Larrabee, of Columbia; and Solicitor David Michael Pascoe, Jr., of Orangeburg, all for Respondent.

———————————

**PER CURIAM:**  Jason Bell appeals his conviction and sentence for the murder of his father, Jim Bell.[1]  On appeal, he argues the trial court erred by (1) refusing to charge voluntary manslaughter, (2) admitting a jail call recording because it was impermissible bad-character evidence, and (3) admitting the results of a third-party toxicology test through the pathologist.  We affirm pursuant to Rule 220(b), SCACR, and the following authorities:

1. Jason argues the trial court erred by refusing to charge voluntary manslaughter because the facts fit the plain language in the statutory definition of voluntary manslaughter as "the unlawful killing of another without malice, express or implied."  Jason admitted to shooting his father; however, he claimed the shooting was essentially an assisted suicide, not a malice-motivated killing.  We hold the trial court correctly determined Jason was not entitled to a voluntary manslaughter instruction.  *See State v. Edwards*, 384 S.C. 504, 508, 682 S.E.2d 820, 822 (2009) (explaining that in criminal cases, this court sits to review errors of law only and is bound by the trial court's factual findings unless they are clearly erroneous); *State v. Shuler*, 344 S.C. 604, 632, 545 S.E.2d 805, 819 (2001) ("The trial [court] determines the law to be charged on the presentation of evidence at trial."); *State v. Childers*, 373 S.C. 367, 373, 645 S.E.2d 233, 236 (2007) ("In determining whether the evidence requires a charge on voluntary manslaughter, this [c]ourt must view the facts in the light most favorable to the defendant.").

Pursuant to the South Carolina Code, "manslaughter" is "the unlawful killing of another without malice, express or implied."  S.C. Code Ann. § 16-3-50 (2015).  This "general statutory definition . . . includes both voluntary and involuntary manslaughter."  *State v. Barnett*, 218 S.C. 415, 423, 63 S.E.2d 57, 59 (1951).  The legislature has never defined voluntary or involuntary manslaughter; thus, we look to the common law for the more specific definitions and elements of those offenses.  *See Singleton v. State*, 313 S.C. 75, 83, 437 S.E.2d 53, 58 (1993) ("The common law remains in full force and effect in South Carolina unless changed by clear and unambiguous legislative enactment."); *see also Hoogenboom v. City of Beaufort*, 315 S.C. 306, 318 n.5, 433 S.E.2d 875, 884 n.5 (Ct. App. 1992) ("The Legislature is presumed to enact legislation with reference to existing law, and there is a strong presumption that it does not intend by statute to change common law rules.").  South Carolina case law defines voluntary manslaughter as "the unlawful killing of a human being in [a] sudden heat of passion upon sufficient legal provocation."  *See, e.g.*, *Shuler*, 344 S.C. at 632, 545 S.E.2d at 819.

---

[1] Because the main individuals involved in this case are related and share the same last name, we will refer to them by their first names.

Voluntary manslaughter is "distinguished from murder because the vital element of malice is missing." *State v. Gandy*, 283 S.C. 571, 573, 324 S.E.2d 65, 66-67 (1984), *overruled on other grounds by State v. Lowry*, 315 S.C. 396, 399-400, 434 S.E.2d 272, 274 (1993).

Still, Jason was not entitled to a voluntary-manslaughter instruction simply because he introduced some evidence of a lack of malice. As our appellate courts have repeatedly instructed, "[b]oth heat of passion and sufficient legal provocation must be present at the time of killing to constitute voluntary manslaughter." *Shuler*, 344 S.C. at 632, 545 S.E.2d at 819. Jason failed to present evidence of either element. The sudden heat of passion "must be such as would naturally disturb the sway of reason and . . . produce what may be called an uncontrollable impulse to do violence." *State v. Sams*, 410 S.C. 303, 309, 764 S.E.2d 511, 514 (2014). Jason's own statement to police indicated that he deliberated about killing his father for hours, retreating to his room to consume alcohol and "pray" about his decision; waited for fireworks to start in order to cover up the sound of the shots; and vehemently denied that he wished to harm his father; rather, he asserted that he acted out of mercy. *See Childers*, 373 S.C. at 375, 645 S.E.2d at 237 (Toal, C.J., concurring in result) ("Voluntary manslaughter, by definition, requires a criminal intent to do harm to another. "). "Moreover, there must be evidence that the heat of passion was caused by sufficient legal provocation." *State v. Payne*, 434 S.C. 121, 137, 862 S.E.2d 81, 89 (Ct. App. 2021) (quoting *State v. Starnes*, 388 S.C. 590, 597, 698 S.E.2d 604, 608 (2010)). Jason asserted he killed his father to carry out Jim's wishes that Jason end his life if he were suffering. However, "sufficient legal provocation" contemplates some kind of physical aggression or assault, and words alone are not sufficient to constitution legal provocation. *See State v. Gilliam*, 66 S.C. 419, 421, 45 S.E. 6, 7 (1903) (explaining that "[a] sufficient legal provocation involves the idea of an assault and battery" and "words only, however opprobrious, would not be sufficient to reduce a killing from murder to manslaughter"); *State v. Hernandez*, 386 S.C. 655, 661, 690 S.E.2d 582, 585 (Ct. App. 2010) ("Sufficient legal provocation must include more than 'mere words' or a display of a willingness to fight without an overt, threatening act."). Jason offered no evidence of any physical aggression or assault from Jim; rather, he asserted the "provocation" was his father's verbal directive, given more thirty years earlier. Thus, we hold that even when viewing the evidence in a light most favorable to Jason, he was not entitled to the voluntary manslaughter instruction.[2] *See*

---

[2] Jason also argues that the State created the issue in this case by charging him with the incorrect crime—murder instead of assisted suicide—and then opposing a manslaughter instruction. We disagree. *See State v. Burdette*, 335 S.C. 34, 40, 515

*Childers*, 373 S.C. at 373, 645 S.E.2d at 236 ("In determining whether the evidence requires a charge on voluntary manslaughter, this [c]ourt must view the facts in the light most favorable to the defendant.").

2. Jason argues the trial court erred by admitting the recording of a jail call between himself and his mother because it was bad-character evidence prohibited by Rules 404 and 403, SCRE. We hold the trial court did not err in admitting this evidence. *See State v. Clasby*, 385 S.C. 148, 154, 682 S.E.2d 892, 895 (2009) ("The trial [court] has considerable latitude in ruling on the admissibility of evidence and [its] decision should not be disturbed absent prejudicial abuse of discretion."); Rule 404(b), SCRE (explaining that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith" except when the evidence is relevant to prove "motive, identity, the existence of a common scheme or plan, the absence of mistake or accident, or intent"); *State v. Cutro*, 365 S.C. 366, 374-75, 618 S.E.2d 890, 894 (2005) ("[B]ad act evidence that falls within a[n] exception and meets the clear and convincing standard may still be excluded if the danger of unfair prejudice substantially outweighs the probative value of the evidence."); *State v. Wilson*, 345 S.C. 1, 7, 545 S.E.2d 827, 830 (2001) ("Evidence is unfairly prejudicial if it has an undue tendency to suggest a decision on an improper basis, such as an emotional one.").

First, we question whether the portion of the phone call regarding the will represents a prior bad act. Jason asks if he was included in the will, and Rose says no and that everything was left to her. Nothing in their conversation indicates Jason was not included because of something he did—much less something bad. Thus, even if the phone call "suggests there was a prior disagreement between [Jason] and [Jim], there is no indication the prior disagreement was the result of a bad act committed by [Jason.]" *State v. Braxton*, 343 S.C. 629, 636, 541 S.E.2d 833, 836 (2001) (affirming the admission of testimony regarding an argument between Braxton and the victim over the victim's apparent refusal to sell him cigarettes because it was not testimony regarding a prior bad act and was relevant to the issue of motive). The portion of the phone call in which Jason presses Rose for money arguably depicts him "manipulating" her and being rude to her, and thus, constitutes a prior bad act. However, the nature of Jason's relationship with his parents was a contested issue at trial, and we find this evidence was relevant to motive under that theory. *See* Rule 404(b) (stating the evidence of a defendant's

---

S.E.2d 525, 528-29 (1999) ("Choosing which crime to charge a defendant with is the essence of prosecutorial discretion . . . .").

prior bad acts is admissible to prove "motive, identity, the existence of a common scheme or plan, the absence of mistake or accident, or intent"). Further, this evidence was cumulative to other evidence of Jason's bad behavior toward his parents. *See State v. Blackburn*, 271 S.C. 324, 329, 247 S.E.2d 334, 337 (1978) ("[T]he admission of improper evidence is harmless where it is merely cumulative to other evidence."). Consequently, we affirm.

3. Jason asserts the trial court erred under the Confrontation Clause by admitting the results of a third-party toxicology report through the pathologist, citing *State v. Brewer*.[3] Although we agree that the admission of the report was error, we hold it was harmless. *See id.* at 54, 882 S.E.2d at 165 (holding that "the State violated Brewer's Sixth Amendment right to confront the witnesses against her because it was permitted to use a surrogate witness to explain the results of a test involving a key fact at issue and to essentially vouch for the accuracy of that lab without undergoing" cross-examination); *Wright v. State*, 446 S.C. 475, 492, 920 S.E.2d 17, 25 (Ct. App. 2025) ("Generally, 'constitutional error does not automatically require reversal of a conviction.'" (quoting *Arizona v. Fulminante*, 499 U.S. 279, 306 (1991))), *reh'g denied* (Aug. 20, 2025); *Franklin v. Catoe*, 346 S.C. 563, 573, 552 S.E.2d 718, 724 (2001) (acknowledging "the appropriateness of a harmless error analysis even when a defendant's constitutional rights have been violated"); *State v. McCray*, 413 S.C. 76, 91, 773 S.E.2d 914, 922 (Ct. App. 2015) ("A violation of [a] defendant's Sixth Amendment right to confront [a] witness is not *per se* reversible error if the error was harmless beyond a reasonable doubt." (quoting *State v. Pradubsri*, 403 S.C. 270, 280, 743 S.E.2d 98, 104 (Ct. App. 2013)); *see also McCray*, 413 S.C. at 91, 773 S.E.2d at 922 (finding the admission of a DNA expert's testimony violated McCray's rights under the Confrontation Clause because the expert "merely served as a conduit to introduce the results of [a third party's] DNA tests" but that the error was harmless).

In this case, the pathologist's testimony was cumulative to other trial testimony— most importantly, that of Jim's doctor who testified that Jim had not been prescribed any pain medication at the time of his death—and multiple other witnesses who contradicted Jason's assertion that Jim was in significant pain at the time of his death. Additionally, the State presented significant evidence that Jason attempted to mislead investigators into believing Jim had committed suicide in order to cover up his own involvement in the shooting. Therefore, we find the admission of the pathology report was harmless error. *See McCray*, 413 S.C. at 91, 773 S.E.2d at 922 ("A violation of [a] defendant's Sixth Amendment right to

---

[3] 438 S.C. 37, 44, 882 S.E.2d 156, 160 (2022).

confront [a] witness is not *per se* reversible error if the error was harmless beyond a reasonable doubt." (quoting *Pradubsri*, 403 S.C. at 280, 743 S.E.2d at 104)); *id.* (explaining that when determining whether a particular error was harmless, this court evaluates multiple factors including "the importance of the witness'[s] testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross[-]examination otherwise permitted, and . . . the overall strength of the prosecution's case." (quoting *State v. Gracely*, 399 S.C. 363, 375, 731 S.E.2d 880, 886 (2012))).

**AFFIRMED.**

**THOMAS, MCDONALD, and TURNER, JJ., concur.**