525 S.E.2d 511

**The STATE of South Carolina, Respondent,**

v.

**Randy Michael COLE, Appellant.**

**No. 25037.**

Supreme Court of South Carolina.

Heard Oct. 19, 1999.

Decided Jan. 4, 2000.

Assistant Appellate Defender Robert M. Dudek, of South Carolina Office of Appellate Defense, of Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Assistant Attorney General Robert E. Bogan, of Office of the Attorney General, of Columbia; and Solicitor Holman C. Gossett, of Spartanburg, for respondent.

BURNETT, Justice:

Appellant was convicted of the murder of Bobby Spencer. He appeals the trial court's refusal to instruct the jury on voluntary manslaughter. We affirm.

### FACTUAL/PROCEDURAL BACKGROUND

On Christmas Eve, 1996, Appellant, his brother Scott Cole, and his friends Jason Best and Jay McKown were together at Appellant's apartment. Between 9:00 and 10:00 that evening, Paul Pennington and the victim, Bobby Spencer, arrived, followed closely by three young women. Pennington and the victim asked to borrow money from Appellant and he refused.

With no apparent provocation, Pennington attacked Best, struck him several times about the head, and jerked Best's gold chains off his neck. Appellant intervened, and he and Pennington fought briefly.

The victim broke up the fight between Appellant and Pennington. Pennington continued to behave hostilely, and Appellant and Pennington fought a second time. The victim told Appellant he was going to "thug" him if he did not stop fighting Pennington. The fight ended and Pennington and the victim started to leave. As they went out the door, Pennington spoke threateningly to Appellant's brother and promised to return. Pennington also intentionally overturned Appellant's stereo on the way out.

When Pennington and the victim went out the front door, Appellant went out the back door to his mother's apartment next door where he retrieved his gun, a semi-automatic rifle. The gun was already loaded with a clip. Appellant then went out his mother's front door. Standing in his front yard, Appellant claimed he heard shots being fired. Appellant fired his gun, killing the victim. Appellant said he fired toward the ground, but the cause of the victim's death was determined to be a gunshot wound to the chest.

By all accounts, the shooting occurred three to five minutes after Pennington and the victim left Appellant's apartment. He fired the gun, Appellant said, because "I was scared they might be coming back. I was scared they might come in my house and kill me and my brother, or maybe not kill, just hurt us, whatever. I didn't know what to do. I was scared." Appellant testified that he did not intend to shoot the victim, he was just scared and wanted to frighten Pennington and the victim away.

Appellant re-entered the apartment and said something to the effect of, "I think I shot Bobby." Appellant appeared to be scared and in shock.

When the police arrived in response to a neighbor's call reporting gunshots, the friends denied knowledge of a shooting, but Appellant insisted on making a police report of the incident with Pennington. The police left without realizing the victim was lying dead on the ground outside.

After the police left, Appellant dragged the victim's body, face down, up an embankment. Appellant claimed he moved

him toward the light so he could determine if the victim was still alive. Other witnesses claimed Appellant tried to get them to help remove the body and pick the shells up off the ground. One of the men present later reported the shooting to his uncle, a sheriff's deputy. Appellant hid from the police and was arrested a week later on January 1, 1997.

The jury found Appellant guilty of murder and the judge sentenced him to life imprisonment.

## ISSUE

Did the trial court err in refusing to charge voluntary manslaughter?

## DISCUSSION

Appellant asserts the trial court erred in refusing to charge the jury with voluntary manslaughter. We disagree.

The law to be charged must be determined from the evidence presented at trial. *State v. Lee*, 298 S.C. 362, 380 S.E.2d 834 (1989). In determining whether the evidence requires a charge on voluntary manslaughter, this Court must view the facts in the light most favorable to the defendant. *State v. Byrd*, 323 S.C. 319, 474 S.E.2d 430 (1996). To warrant a court's eliminating the offense of manslaughter, it should very clearly appear that there is no evidence whatsoever tending to reduce the crime from murder to manslaughter. *State v. Lowry*, 315 S.C. 396, 434 S.E.2d 272 (1993).

Voluntary manslaughter is the unlawful killing of a human being in sudden heat of passion upon sufficient legal provocation. *State v. Kornahrens*, 290 S.C. 281, 350 S.E.2d 180 (1986). Heat of passion alone will not suffice to reduce murder to voluntary manslaughter. *State v. Walker*, 324 S.C. 257, 478 S.E.2d 280 (1996). Both heat of passion and sufficient legal provocation must be present at the time of the killing. *State v. Tyson*, 283 S.C. 375, 323 S.E.2d 770 (1984). "The sudden heat of passion, upon sufficient legal provocation, which mitigates a felonious killing to manslaughter, while it need not dethrone reason entirely, or shut out knowledge and volition, must be such as would naturally disturb the sway of reason, and render the mind of an ordinary person incapable of cool reflection, and produce what, according to human

experience, may be called an uncontrollable impulse to do violence." *State v. Byrd,* 323 S.C. 319, 474 S.E.2d 430 (1996) (internal quotations omitted).

■ The trial court did not err in refusing to instruct the jury on voluntary manslaughter because there was no evidence of sudden heat of passion or sufficient legal provocation. Viewed in the light most favorable to Appellant, the evidence reveals that Pennington assaulted Appellant's friend and stole his jewelry. Appellant twice fought briefly with Pennington, and was pulled off Pennington by the victim. Pennington pushed over Appellant's stereo, and then Pennington and the victim left. We do not think these facts constitute sufficient legal provocation for voluntary manslaughter.

■ Furthermore, there was no evidence presented that Appellant was overcome by a sudden heat of passion as would produce an "uncontrollable impulse to do violence." On the contrary, by Appellant's own testimony, he shot at the men to scare them away. Appellant's testimony appears designed to support a charge of self defense, not heat of passion. Even if Appellant had been in the heat of passion during the confrontation in his apartment, three to five minutes had passed in which he had time to go to his mother's apartment and find his gun. Far from passion, these actions indicate "cool reflection." *See State v. Walker,* 324 S.C. 257, 478 S.E.2d 280 (1996). Appellant admitted that in the time between when Pennington and the victim went out the front door and he went out the back, he had "time enough for me to get my head together." Most significantly, the men had been gone for several minutes when Appellant shot and killed the victim.

In *State v. Cooney,* 320 S.C. 107, 463 S.E.2d 597 (1995), the defendant was convicted of murder for shooting a man who earlier had robbed his store. The defendant attempted to make a citizen's arrest, and shot the victim as he tried to run. This Court held the trial judge did not err in declining to charge voluntary manslaughter:

There was no evidence presented that appellant was in a sudden heat of passion. The only reason appellant gave for shooting the victim was because he was escaping. The victim did not attack appellant, nor was he armed. The victim was fifteen to twenty feet away at the time appellant fired his gun three to four times at the victim. There was

no evidence that appellant was provoked by the victim at the time of the killing.

320 S.C. at 113, 463 S.E.2d at 600. Likewise, in *State v. Rogers,* 320 S.C. 520, 466 S.E.2d 360 (1996), this Court found a charge of voluntary manslaughter unwarranted where the victim was moving away from the defendant and made no statements evincing an intent to injure the defendant.

The cases relied upon by Appellant are clearly distinguishable. In *State v. Lowry,* 315 S.C. 396, 434 S.E.2d 272 (1993), this Court found the trial judge should have charged voluntary manslaughter where the defendant shot the decedent after the decedent taunted the defendant then moved toward him in a menacing fashion with his arms outstretched as if to grab him. *Id.* at 398, 434 S.E.2d at 273. The Court found a jury could reasonably conclude that when taken together, the menacing words and the actions constituted a legal provocation sufficient to produce sudden heat of passion. *Id.* at 399, 434 S.E.2d at 274. In *State v. Gardner,* 219 S.C. 97, 64 S.E.2d 130 (1951), there was evidence the defendant and the victim were in a physical fight *at the time* of the stabbing.

We find no evidence of either heat of passion *or* sufficient legal provocation. The trial judge did not err in refusing to charge voluntary manslaughter. We therefore **AFFIRM** Appellant's conviction.

TOAL, Acting C.J., MOORE, WALLER, JJ., and Acting Associate Justice GEORGE T. GREGORY, Jr., concur.