733 S.E.2d 605

The **STATE**, Respondent,

v.

Wendell **WILLIAMS**, Appellant.

**No. 5039.**

Court of Appeals of South Carolina.

Heard March 13, 2012.

Decided Oct. 24, 2012.

Appellate Defender Kathrine Hudgins, of Columbia, for Appellant.

Attorney General Alan Wilson, Chief Deputy Attorney General John W. McIntosh, Senior Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General William Blitch, Jr., all of Columbia; and Solicitor Barry J. Barnette, of Spartanburg, for Respondent.

WILLIAMS, J.

In this criminal appeal, Wendell Williams (Williams) argues the circuit court erred in three respects when it: (1) refused to instruct the jury on the law of self-defense; (2) refused to instruct the jury on the law of accident; and (3) refused to admit toxicology evidence regarding the intoxication of the victim. We reverse.

**FACTS**

The following evidence was adduced during Williams' trial for killing his brother, Joe Williams (victim).

Around midnight on September 26, 2008, Williams went to the victim's house. The victim's girlfriend, Victoria Holbert (Holbert), testified that she and the victim saw car lights pulling into the driveway. Holbert said that while she did not go onto the porch, she overhead Williams telling the victim that he owed Williams money for a car. When Holbert peered out the window, she noticed what appeared to be a shotgun in Williams' hand. She immediately called 911. Shortly thereafter, Holbert heard a single gunshot and called 911 again. She testified she saw the victim lying on the porch with a gunshot wound to his right leg. Holbert stated the victim was unarmed during the entire altercation.

Kevin Kelly (Kelly) also testified at trial. According to Kelly, Williams called him the night of the shooting and asked Kelly to pick Williams up and drive him to the victim's house. At trial, Kelly stated when they pulled into the victim's driveway, Williams approached the victim's porch armed with a shotgun. Kelly testified he overheard Williams tell the victim that the victim owed Williams money for his car that had disappeared while Williams was in prison. As the argument escalated, Kelly testified the victim began retreating

towards the front door. According to Kelly, Williams then stated, "I'm going to ask you one more time, where's my money?" Kelly claimed the victim replied that he was not giving Williams anything, and the victim then tried to turn around and walk into his house. Kelly testified that as the victim walked away, Williams shot the victim in the back of his right leg. Kelly said he never saw the victim with a gun. Once Kelly heard gunfire, he testified he began backing out of the victim's driveway, at which time Williams jumped into the passenger's side of the car. Kelly testified he never observed Williams call 911 nor did Williams ask Kelly to call 911.

Williams testified in his own defense at trial. Williams stated he drove to the victim's house at approximately 1:00 a.m. because his niece had been on the phone all night and he needed to talk to the victim about money the victim owed to him. Williams, however, also testified that he came to the victim's house because someone had seen Williams' car parked on a nearby highway. When Williams called the police about recovering it, Williams claimed the police told him the victim would have to file a report because the victim last possessed the keys to the vehicle. Williams claimed the victim was sitting on the victim's front porch when he and Kelly pulled into the driveway. When Williams approached the porch, he testified he could see a small revolver tucked into the waistband of the victim's boxer shorts. Williams stated he tried to tell the victim the information about his missing vehicle as he approached the porch, but the victim started cussing at Williams. Because the victim had a "demented" look on his face, Williams stated he became scared.

According to Williams, the victim then reached towards a mailbox on the wall with his left hand and towards the revolver in his boxer shorts with his right hand. At this point, Williams jumped over the banister of the porch and ran back towards the car. Williams testified that as he was retreating, he was "expecting to get shot in the back" and "was in fear for [his] life." Williams stated that Kelly, who was standing behind the passenger's side door, then threw Williams a loaded shotgun.[1] Williams claimed the victim pointed his

---

1. Williams admitted on cross-examination he initially told the police he found a loaded shotgun lying on the sidewalk, but Williams later

revolver at Williams, and Williams pulled the trigger on his shotgun. Williams stated he did not remember pulling the trigger and claimed he did not intentionally shoot the victim. Williams said he heard the victim say, "Oh," but Williams thought the bullets bounced off the ground since he was pointing the shotgun towards the ground when he shot it. However, during cross-examination, Williams stated he knew the victim had shot a couple of people, and if he had not defended himself, he knew the victim would have shot him. Williams and Kelly immediately fled the scene, but Williams later turned himself into police.

After Williams' testimony, he attempted to introduce toxicology evidence about which substances were in the victim's bloodstream at the time of his death. Williams claimed this testimony was relevant because the presence of intoxicating substances could affect the victim's demeanor and would be evidence which the jury could consider in determining whether Williams felt threatened at the time of the altercation. The circuit court excluded the testimony but allowed Williams to proffer the toxicologist's testimony, which would have revealed that the victim's blood tested positive for alcohol, cocaine, hydrocodone, THC, and diazepam.

Williams then requested the circuit court charge the jury on voluntary manslaughter, self-defense, and accident. The circuit court granted Williams' motion on voluntary manslaughter but denied his requests for self-defense and accident. The circuit court then charged the jury on murder and voluntary manslaughter. The jury found Williams guilty of the lesser-included charge of voluntary manslaughter, and the circuit court sentenced Williams to twenty-one years imprisonment. This appeal followed.

## STANDARD OF REVIEW

In criminal cases, the appellate court sits to review errors of law only. *State v. Baccus*, 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006). Thus, an appellate court "is bound by the [circuit] court's factual findings unless they are clearly

---

explained he was trying to protect Kelly who was on probation. Williams also admitted on cross-examination to lying to the police about leaving the gun at the scene and telling the police another person, not Kelly, drove the getaway vehicle.

erroneous." *Id.* "This Court does not re-evaluate the facts based on its own view of the preponderance of the evidence but simply determines whether the [circuit court]'s ruling is supported by any evidence." *State v. Wilson,* 345 S.C. 1, 6, 545 S.E.2d 827, 829 (2001).

## LAW/ANALYSIS

### I. Self–Defense

Williams claims the circuit court erred when it refused to instruct the jury on self-defense. We agree.

"A jury charge is correct if, when the charge is read as a whole, it contains the correct definition and adequately covers the law." *State v. Mattison,* 388 S.C. 469, 478, 697 S.E.2d 578, 583 (2010) (internal citations omitted). "The law to be charged must be determined from the evidence presented at trial." *State v. Cole,* 338 S.C. 97, 101, 525 S.E.2d 511, 512 (2000) (internal citations omitted); *see also Mattison,* 388 S.C. at 478, 697 S.E.2d at 583 (stating appellate courts should "consider the court's jury charge as a whole in light of the evidence and issues presented at trial"). When reviewing the circuit court's refusal to deliver a requested jury instruction, appellate courts must consider the evidence in a light most favorable to the defendant. *Cole,* 338 S.C. at 101, 525 S.E.2d at 512–13.

"If there is any evidence in the record from which it could reasonably be inferred that the defendant acted in self-defense, the defendant is entitled to instructions on the defense, and the [circuit court's] refusal to do so is reversible error." *State v. Day,* 341 S.C. 410, 416–17, 535 S.E.2d 431, 434 (2000). A person is justified in using deadly force in self-defense when:

(1) The defendant was without fault in bringing on the difficulty;

(2) The defendant . . . actually believed he was in imminent danger of losing his life or sustaining serious bodily injury, or he actually was in such imminent danger;

(3) If the defense is based upon the defendant's actual belief of imminent danger, a reasonable prudent man of ordinary

firmness and courage would have entertained the same belief ...; and

(4) The defendant had no other probable means of avoiding the danger of losing his own life or sustaining serious bodily injury than to act as he did in this particular instance.

*State v. Dickey*, 394 S.C. 491, 499, 716 S.E.2d 97, 101 (2011). When a defendant claims self-defense, the State is required to disprove the elements of self-defense beyond a reasonable doubt. *State v. Wiggins*, 330 S.C. 538, 544–45, 500 S.E.2d 489, 492–93 (1998). "It is an axiomatic principle of law that the defense has not been established if any one element is disproven." *State v. Bixby*, 388 S.C. 528, 554, 698 S.E.2d 572, 586 (2010).

We reverse the circuit court's decision not to instruct the jury on self-defense because some evidence exists to support a self-defense charge. *See State v. Jackson*, 384 S.C. 29, 35, 681 S.E.2d 17, 21 (Ct.App.2009) ("When any evidence in the record entitles the accused to a jury charge on self-defense, a [circuit court's] refusal to give the charge is reversible error."). At trial, Williams testified the victim had a "demented" look on his face when Williams approached the front porch. Williams claimed the victim began to curse at him when Williams asked the victim about Williams' missing car. Williams stated he became scared because the victim started to reach for a revolver that was tucked into the victim's boxer shorts. Once the victim began to reach for his gun, Williams jumped over the banister of the porch. Williams claimed he "was in fear for his life" and thought he was about to "get shot in the back." As Williams was running from the house, he stated Kelly threw a loaded shotgun to him, and when he turned back towards "[his] brother, he was turning around on [Williams] ... [with] the pistol in his hand at that time." Because Williams knew his brother had shot people before, he claimed if he had not shot his brother, he "[knew] he would have shot me."

Viewing the evidence in the light most favorable to Williams, we find a jury could have found Williams was not at fault in bringing about the difficulty based on Williams' testimony that the victim began cursing at him, had a "demented" look on his face, and pulled a pistol on Williams after Williams

confronted him unarmed. *See Dickey,* 394 S.C. at 500, 716 S.E.2d at 101 (finding defendant was not at fault in bringing about difficulty despite pulling loaded weapon on victim when victim began advancing towards defendant in an aggressive manner). Williams stated the victim had shot other people before, and he knew his brother would have shot him if he did not shoot first. Williams' testimony that he thought his brother was going to shoot him in his back as he ran from the front porch indicates Williams believed he was in imminent danger, and if true, we find this belief to be reasonable. *See Day,* 341 S.C. at 417, 535 S.E.2d at 435 (finding defendant was entitled to self-defense charge when he shot and killed victim because defendant believed he was in imminent danger when he thought the victim was going to pull a gun on him). Last, there is evidence, although conflicting, that Williams had no other probable means of avoiding the danger. Specifically, when Williams turned back towards the victim, Williams stated the victim was already pointing a gun at him. Although both eyewitnesses' testimonies support a very different theory of fault, we cannot ignore the fact that at least some evidence was presented to make self-defense a jury question. Accordingly, we find the circuit court erred in refusing to charge self-defense to the jury.

## II. Accident

Next, Williams claims the circuit court erred in failing to charge the jury on accident. We agree.

A homicide will be excusable on the ground of accident when (1) the killing was unintentional; (2) the defendant was acting lawfully; and (3) due care was exercised in the handling of the weapon. *State v. Chatman,* 336 S.C. 149, 153, 519 S.E.2d 100, 102 (1999). If the circumstances of a case show a defendant was entitled to arm himself in self-defense when the gun went off, he would be entitled to a charge of accident supposing evidence satisfies the other elements of the doctrine. *State v. Burriss,* 334 S.C. 256, 262, 513 S.E.2d 104, 108 (1999).

Williams' testimony at trial vacillated as to whether he acted intentionally or unintentionally when he shot the victim. As discussed above, Williams testified he shot the

victim because he feared the victim was going to shoot him first. As such, Williams had the right to act in self-defense. However, Williams also stated he shot the weapon but did not remember doing it and did not intentionally shoot it. He further testified that the gun was pointing down and he did not intend to shoot the victim. Because the State failed to disprove Williams was using due care when he handled the gun, we believe this testimony is sufficient to at least present a question for the jury as to whether Williams shot the victim accidentally. *See State v. Harris,* 382 S.C. 107, 674 S.E.2d 532 (Ct.App.2009) (holding the burden rests on the State to prove beyond a reasonable doubt the act was not an accident).

We note that even though self-defense and accident charges are often mutually exclusive, there is evidence in the record to support both charges in this case. *See Burriss,* 334 S.C. at 262, 513 S.E.2d at 108 (stating that if the circumstances prove a defendant was entitled to arm himself in self-defense when the shooting occurred, the defendant would be entitled to a charge of accident so long as evidence satisfies the other elements of the doctrine); *cf. State v. Light,* 378 S.C. 641, 650, 664 S.E.2d 465, 469–70 (2008) ("A past holding of this Court seems to indicate that, where a defendant is claiming self-defense ... involuntary manslaughter may not be charged.... However, a self-defense charge and an involuntary manslaughter charge are not mutually exclusive, *as long as there is any evidence to support both charges....* When there is a factual issue as to whether the shooting was committed intentionally in self-defense or was committed unintentionally, then the defendant is entitled to both charges as there is 'any evidence' to support each charge." (emphasis added)); *see also* 15 A.L.R.4th 983 ("Underlying the court's decision in many, if not most, cases involving the defendant's right, in a prosecution for homicide or attempted homicide by shooting to an instruction on both self-defense and accident is its view as to whether, in a particular evidentiary context, the defenses are inconsistent and may not be asserted simultaneously, even in the alternative; and this, in turn, appears to depend largely on the nature of the defendant's testimony, and that of other witnesses, relating to the defenses.").

Accordingly, we find the circuit court erred in refusing Williams' request to charge the jury on the law of accident.

## CONCLUSION

Based on the foregoing, we **REVERSE** Williams' conviction and **REMAND** for a new trial.[2]

THOMAS, J., concurs.

LOCKEMY, J., concurs in part and dissents in part.

I respectfully concur in part and dissent in part. I concur with the majority's holding that the circuit court erred in failing to charge self-defense to the jury. However, I dissent in the majority's decision to reverse the circuit court as to Williams' request to charge the jury on the law of accident.

Williams' testimony is the only evidence in the record supporting a charge that could excuse him of killing the victim. Williams testified he noticed the victim had a gun in his boxer shorts as he approached the porch. When Williams saw the victim reach for the gun, he jumped over the porch bannister and ran back towards the car where, according to one version of Williams' testimony, Kelly threw him a loaded shotgun. Williams, who feared he would be shot in the back, turned around and faced the victim. Williams testified he did not remember pulling the trigger, but admitted firing the shotgun as the victim pointed the revolver at him. Williams claimed he was pointing the shotgun toward the ground when he fired and did not intentionally shoot the victim. If the jury believes Williams' testimony that he was defending himself by arming himself with the shotgun, then, after a proper charge of self-defense, the jury can acquit Williams. The jury can choose whether or not to believe Williams intended to shoot the victim. Either way, self-defense should have been charged because Williams presented the shotgun in response to the aggression of the victim.

Although I agree with my colleagues that self-defense and accident charges are not *per se* mutually exclusive, I believe they exclude each other in this case. I state this with the

---

**2.** Our decision to reverse on the foregoing issues disposes of Williams' remaining argument on appeal. Therefore, we decline to address Williams' remaining argument. *See Futch v. McAllister Towing, Inc.,* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (ruling an appellate court need not review remaining issues when its determination of a prior issue is dispositive of the appeal).

knowledge that the jury can accept the testimony of a witness as a whole or in part, and may believe the testimony of one witness and not another. As the majority states, homicide will be excusable on the ground of accident when (1) the killing was unintentional; (2) the defendant was acting lawfully; and (3) due care was exercised in the handling of a weapon. *See Chatman*, 336 S.C. at 153, 519 S.E.2d at 102. Here, none of the evidence presented supports a finding that Williams acted lawfully. Element one is satisfied by Williams' testimony that he did not intentionally shoot the victim. Additionally, although a stretch, catching a loaded shotgun in mid-air and reeling around like John Wayne in *Rio Bravo*[3] to face a charging "demented" person could be considered handling a weapon with due care. However, even though the first and third elements may be satisfied, no evidence was presented to satisfy the second element. If Williams shot the victim because he reasonably believed the victim was about to kill him, then he was acting in self-defense. If that was not the case, as other witnesses stated, or the belief was not reasonable, then Williams' presentation of the shotgun was not lawful. Whether Williams shot at the ground, into the air, or not at all, he committed a crime by presenting a firearm. Williams' presentation of the shotgun was only lawful if it was presented in self-defense.

Accordingly, I concur with the majority's holding that the circuit court erred in failing to charge the jury on self-defense and that this case should be remanded for a new trial. However, I do not believe the circuit court erred in not charging the law of accident.

---

**3.** Rio Bravo (Warner Bros. Pictures 1959).