677 S.E.2d 603

**The STATE, Respondent,**

v.

**Raphael HERNANDEZ, Honorio Guerrero and Alfredo Avila–Arjona, Petitioners.**

**No. 26654.**

Supreme Court of South Carolina.

Heard March 4, 2009.

Decided May 26, 2009.

Chief Appellate Defender Joseph L. Savitz, III, of South Carolina Commission on Indigent Defense, of Columbia, for Petitioner.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General Christina J. Catoe, all of Columbia, and Solicitor Donald V. Myers, of Lexington, for Respondent.

Chief Justice TOAL:

Petitioners Raphael Hernandez, Honorio Guerrero, and Alfredo Avila–Arjona were convicted of trafficking marijuana and sentenced to twenty-five years imprisonment. The court of appeals affirmed Petitioners' convictions and sentences. *State v. Hernandez*, Op. No.2007–UP–183 (S.C. Ct.App. filed April 18, 2007). We granted a writ of certiorari to review that decision and now reverse.

### FACTUAL/PROCEDURAL BACKGROUND

At a border crossing in Laredo, Texas, federal officials stopped and searched an eighteen-wheeler tractor-trailer ("tractor-trailer") entering the United States from Mexico. The officials discovered approximately 900 pounds of marijuana concealed in a shipment of wooden furniture destined for Tienda DeLeon in Trenton, South Carolina. Agents found the marijuana compressed into bricks and hidden inside twenty-three wooden chimneys. The officials seized the shipment, replaced the driver with an undercover agent, and continued transporting it to South Carolina for a controlled delivery.

When the tractor-trailer arrived at Tienda DeLeon, Fredy DeLeon,[1] the owner of the store, along with two other individuals who arrived at Tienda DeLoen in a Ford Thunderbird unloaded several pieces of furniture. The three men then

---

1. Fredy DeLeon was tried and convicted with Petitioners but is not a party in this appeal.

directed the undercover agents to transport the rest of the shipment to Billy's Super Store, also located in Trenton.

The undercover agents drove the tractor-trailer to Billy's Super Store as directed and parked it next to the loading bay. After approximately twenty-five minutes, the agents witnessed the same Thunderbird they saw at Tienda DeLeon drive past Billy's Super Store and reappear a few minutes later along with a Ryder moving truck ("the Ryder truck") driven by Petitioner Guerrero and with Petitioners Avila–Arjona and Hernandez as passengers. The Thunderbird pulled beside the tractor-trailer, and the Ryder truck parked in front of the tractor-trailer. The passenger of the Thunderbird exited the car and attempted to enter the cab of the tractor-trailer, but the undercover agent indicated that he was not allowed inside the tractor-trailer. The Thunderbird passenger then directed the undercover agents to follow him, while the driver of the Thunderbird spoke with Petitioners who were still in the Ryder truck. The three vehicles formed a caravan, with the Thunderbird leading, followed by the Ryder truck, and the tractor-trailer in the rear.

The caravan drove down a dirt road for a while. Subsequently, the Ryder truck and the tractor-trailer became stuck in the mud. The undercover agents decided to call off the operation and promptly arrested Petitioners. The Thunderbird drove away and the men were never apprehended. The agents searched the Ryder truck and found the cargo portion of the truck empty. However, the agents discovered a receipt indicating that Petitioner Guerrero rented the Ryder truck the day before and a receipt from a motel for the night before the controlled delivery took place.

Petitioners were indicted for trafficking marijuana. At trial, Petitioners moved for a directed verdict claiming that the State had only proved mere presence at the scene and had failed to prove the element of knowledge. The trial court denied Petitioners' motion, and the court of appeals affirmed, holding that there was substantial circumstantial evidence to send the case to the jury.

This Court granted Petitioners' request for a writ of certiorari to review the court of appeals' decision, and Petitioners present the following issue for review:

Did the court of appeals err in affirming the trial court's denial of Petitioners' directed verdict motion because the State only proved mere presence?

## STANDARD OF REVIEW

When ruling on a motion for a directed verdict, the trial court is concerned with the existence or nonexistence of evidence, not its weight. *State v. Weston*, 367 S.C. 279, 292, 625 S.E.2d 641, 648 (2006). A defendant is entitled to a directed verdict when the state fails to produce evidence of the offense charged. *Id.* When reviewing a denial of a directed verdict, an appellate court views the evidence and all reasonable inferences in the light most favorable to the State. *Id.* If there is any direct evidence or substantial circumstantial evidence reasonably tending to prove the guilt of the accused, the Court must find the case was properly submitted to the jury. *Id.* at 292–93, 625 S.E.2d at 648.

## LAW/ANALYSIS

Petitioners argue the court of appeals erred in affirming the trial court's denial of their motion for a directed verdict. We agree.

In relevant part, South Carolina's definition of trafficking marijuana includes: "Any person ... who is knowingly in actual or constructive possession or who knowingly attempts to become in actual or constructive possession" of ten pounds or more of marijuana. S.C.Code Ann. § 44–53–370 (Supp.2006). In drug cases, the element of knowledge is seldom established through direct evidence, but may be proven circumstantially. *State v. Attardo*, 263 S.C. 546, 550, 211 S.E.2d 868, 869 (1975). Knowledge can be proven by the evidence of acts, declarations, or conduct of the accused from which the inference may be drawn that the accused knew of the existence of the prohibited substances. *Id.*

At trial, the State presented two receipts indicating that Petitioners traveled to Trenton for the night and rented the Ryder truck. The undercover agent testified that Petitioners conversed with the driver of the Thunderbird before they caravanned down the rural dirt road. Additionally, the undercover agent testified that in his experience, drug transactions

this large are typically handled within an "inner circle" and all of the parties involved are aware of what transpires.

■ In our view, this evidence does not constitute substantial circumstantial evidence of knowledge. The State failed to present evidence connecting Petitioners to the tractor-trailer or to Fredy DeLeon or evidence that Petitioners had knowledge of the contents of the tractor-trailer. The State claims that it is "nonsensical" to find that the Thunderbird occupants did not know Petitioners prior to this transaction. However, the State failed to present any evidence such as acts, declarations, or specific conduct to support this inference, and thus, we find that the conclusion that Petitioners knew the Thunderbird occupants and therefore had knowledge of the drugs in the tractor trailer is mere speculation. Additionally, the State points to the testimony of the federal agents to support the inference that Petitioners had knowledge of the drugs. We find, however, that while these testimonies may support such an inference, this evidence alone does not constitute substantial circumstantial evidence that Petitioners had knowledge. *See State v. Lollis*, 343 S.C. 580, 584, 541 S.E.2d 254, 256 (2001) (reversing the defendant's conviction where the State did not present substantial circumstantial evidence and where the evidence merely raised a suspicion of guilt).

Although Petitioners' actions may have been suspicious, mere suspicion is insufficient to support the verdict.[2] *State v. Arnold*, 361 S.C. 386, 605 S.E.2d 529 (2004) (holding that the trial court must grant a directed verdict when the evidence

---

**2.** The traditional circumstantial evidence charge provides that when the State relies on circumstantial evidence to prove its case, the jury may not convict the defendant unless:

> Every circumstance relied upon by the State be proven beyond a reasonable doubt; and ... all of the circumstances so proven be consistent with each other and taken together, point conclusively to the guilt of the accused to the exclusion of every other reasonable hypothesis.

*State v. Edwards*, 298 S.C. 272, 275, 379 S.E.2d 888, 889 (1989). Although in *State v. Cherry*, 361 S.C. 588, 606 S.E.2d 475 (2004) the Court abandoned this charge and held that it may confuse a jury by leading it to believe that the standard for measuring circumstantial evidence is different from that for measuring direct evidence, it nonetheless illustrates the lack of evidence against Petitioners.

merely raises a suspicion that the accused is guilty). Accordingly, we reverse Petitioners' convictions and sentences.

## CONCLUSION

For these reasons, we reverse the court of appeals' decision.

WALLER, KITTREDGE, JJ., and Acting Justices JAMES E. MOORE and JAMES A. SPRUILL, concur.