717 S.E.2d 609

**The STATE, Respondent,**

v.

**Andre JACKSON, Appellant.**

**No. 4894.**

Court of Appeals of South Carolina.

Heard June 15, 2011.

Decided Oct. 5, 2011.

Rehearing Denied Nov. 18, 2011.

---

**3.** We decide this case without oral argument pursuant to Rule 215, SCACR.

Kathrine Haggard Hudgins, of Columbia, for Appellant.

Attorney General Alan Wilson, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Senior Assistant Attorney General Harold M. Coombs, of Columbia, for Respondent.

KONDUROS, J.

Andre Jackson appeals his conviction of possession with intent to distribute (PWID) marijuana arising out of a traffic stop. He argues the trial court erred in failing to exclude the stop and denying his motion for a directed verdict due to his mere presence. We reverse.

## FACTS/PROCEDURAL HISTORY

On September 16, 2008, Jackson was riding in a car being driven by Nicholas Carl Davy on I–85 in Spartanburg County. Davy was driving between 54 and 55 miles per hour when Officer Jonathan Montjoy signaled for him to pull his vehicle over. The posted maximum speed limit was 60 miles per hour and the minimum was 45 miles per hour. A search of the car produced four bags of marijuana.

Jackson and Davy were both indicted for PWID marijuana, and their cases were tried together, but Davy was not present at trial. At the outset of trial, Jackson argued the stop resulting in his arrest was invalid because the officer was without probable cause to stop and search the car. Officer Montjoy testified the vehicle was in the middle of three lanes of traffic and traveling much slower than the other drivers on the road. He also provided that the car was impeding the

flow of traffic; cars were passing the vehicle on both sides, and there was a line of cars waiting to pass him. Officer Montjoy determined by radar gun that the car was traveling 54 miles per hour. He testified the normal speed for that time (rush hour) on that road is 70 to 75 miles per hour.

Officer Montjoy testified that once he pulled the car over, he approached it and smelled marijuana in the car. He then asked Davy, the driver, to step to the rear of the vehicle. After talking to Davy and Jackson separately while processing the warning, he noticed their answers were not "real accurate." Although they both told him they were coming from North Carolina and going to Greenville, they could not give an actual location. Officer Montjoy also attempted to find a rental car agreement and Jackson's ID. Officer Montjoy then deployed his K–9 around the vehicle, and the dog alerted on the vehicle. Officers searched the vehicle and found four clear plastic bags with marijuana "[u]nder the center console, where the gear shifter is, the plastic housing there," which was in between the two front bucket seats. Both Davy and Jackson were then arrested for PWID marijuana.

The trial court found section 56–5–1560 of the South Carolina Code (2006) does not reference speed limits and states that no person should drive a vehicle at such a slow speed to impede the normal and reasonable flow of traffic. The trial court noted the testimony was that the vehicle was traveling in the center lane with a long line of traffic behind it and being passed on both sides. The trial court found the officer had probable cause to stop the car based on the statute.

At the close of the State's case, Jackson moved for a directed verdict, arguing the State had not met its burden in proving he had constructive possession of the marijuana or knew it was in the car. The trial court found the State had presented sufficient facts to establish a case for constructive possession and denied the motion.

Jackson testified that he met Davy once. Jackson's twenty-two-year-old son and Davy were school friends, and Jackson and Davy met at Jackson's grandchild's birthday party. Davy asked to stay with Jackson overnight at his home in Charlotte, North Carolina, on a trip from Maryland to Florida or Georgia. Davy was giving Jackson a ride to Greenville, South

Carolina because Jackson had a music "gig" he needed to promote, and Jackson's driver's license was suspended at the time. At the close of the defense's case, Jackson renewed his motion for a directed verdict, which the trial court again denied.

The jury convicted Jackson of PWID.[1] The trial court sentenced him to three years suspended to the three days he had already served and probation for three years. This appeal followed.

## STANDARD OF REVIEW

█ "In criminal cases, the appellate court sits to review errors of law only." *State v. Baccus*, 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006). Thus, an appellate court is bound by the trial court's factual findings unless they are clearly erroneous. *Id.*

## LAW/ANALYSIS

### I. Directed Verdict

Jackson maintains the trial court erred in denying his motion for a directed verdict because he was merely present at the scene. We agree.

In reviewing a denial of a motion for a directed verdict, an appellate court must review the evidence in the light most favorable to the State. *State v. Venters*, 300 S.C. 260, 264, 387 S.E.2d 270, 272 (1990). If any direct evidence or any substantial circumstantial evidence reasonably tends to prove the guilt of the accused, an appellate court must find the case was properly submitted to the jury. *State v. Weston*, 367 S.C. 279, 292–93, 625 S.E.2d 641, 648 (2006).

█ When considering a motion for a directed verdict, a trial court is concerned only with the existence of evidence, not its weight. *State v. Stuckey*, 347 S.C. 484, 498, 556 S.E.2d 403, 410 (Ct.App.2001). Grant of a defense motion for directed verdict of acquittal is proper only "if there is a failure of competent evidence tending to prove the charge." Rule 19(a), SCRCrimP; *State v. Jenkins*, 278 S.C. 219, 222, 294 S.E.2d 44,

---

1. The jury also convicted Davy of PWID.

46 (1982). A trial court must submit the case to the jury if any direct or substantial circumstantial evidence has been presented that reasonably tends to prove the defendant's guilt or from which his guilt may be fairly and logically deduced. *State v. Fennell*, 340 S.C. 266, 270, 531 S.E.2d 512, 514 (2000). However, the trial court should grant a directed verdict motion when the evidence presented merely raises a suspicion of guilt. *State v. Cherry*, 361 S.C. 588, 594, 606 S.E.2d 475, 478 (2004). Suspicion implies a belief or opinion as to guilt based upon facts or circumstances not amounting to proof, but the trial court is not required to find the evidence infers guilt to the exclusion of any other reasonable hypothesis. *Id.*

> Conviction of possession of [illegal drugs] requires proof of possession-either actual or constructive, coupled with knowledge of its presence. Actual possession occurs when the drugs are found to be in the actual physical custody of the person charged with possession. To prove constructive possession, the State must show a defendant had dominion and control, or the right to exercise dominion and control, over the [drugs]. Constructive possession can be established by circumstantial as well as direct evidence, and possession may be shared.

*State v. Hudson*, 277 S.C. 200, 202, 284 S.E.2d 773, 774–75 (1981). "Possession requires more than mere presence." *State v. Stanley*, 365 S.C. 24, 43, 615 S.E.2d 455, 465 (Ct.App. 2005). "In drug cases, the element of knowledge is seldom established through direct evidence, but may be proven circumstantially." *State v. Hernandez*, 382 S.C. 620, 624, 677 S.E.2d 603, 605 (2009). "Knowledge can be proven by the evidence of acts, declarations, or conduct of the accused from which the inference may be drawn that the accused knew of the existence of the prohibited substances." *Id.*

In *Hernandez*, the trial court denied the defendants' motion for a directed verdict on drug trafficking charges when they occupied a rented moving truck that arrived at a place designated for a controlled drug exchange closely behind a car driven by others implicated in the transaction. *Id.* at 622–23, 677 S.E.2d at 604. The supreme court found the State's contention that the defendants knew the occupants of car and thus had knowledge of the drugs in the tractor trailer being driven by undercover agents was pure speculation and insuffi-

cient to support the defendants' conviction. *Id.* at 625, 677 S.E.2d at 605. The court found that while the defendants' conduct may have been suspicious, mere suspicion was insufficient to support a guilty verdict. *Id.*

In *State v. Brown,* 267 S.C. 311, 315, 227 S.E.2d 674, 676 (1976):

> The sum total of the State's evidence against Brown is that he was a passenger in a car on a deserted rural road about 1:00 A.M., that [the driver] had an undetermined sum of cash in a large roll, that Brown was nervous and had no identification, that there was a smell of marijuana in the car, and that there was a large opaque bag containing eight pounds of marijuana on the rear floorboard. [The driver] knew Brown's name as Chuck Brown and Brown told [the driver] to be quiet when [the driver] started to admit the crime.

The court found the State presented no evidence "as to ownership of the car or any special relation [Brown] had with [the driver] or the owner from which Brown's control of the car or its contents might be inferred. The bag containing the marijuana was opaque and so situated that a front seat passenger might never have seen the bag, much less its contents." *Id.* "There was no evidence that Brown was a seller or user of drugs, or that he even recognized the odor of marijuana[,] or that he was a close friend of the driver, or that he spent a substantial part of the night with him." *Id.* at 315–16, 227 S.E.2d at 676–77 (citations omitted). "Although [the officer] testified he smelled the odor of burned marijuana[,] he found no residue of such in or about the car of the defendant." *Id.* at 316, 227 S.E.2d at 677. The court found "[The driver]'s statements in no way incriminated [Brown]." *Id.* at 317, 227 S.E.2d at 677. The court determined, "The evidence when reviewed in the light most favorable to the State fails to make a jury issue of [Brown]'s dominion and control of the marijuana, an essential element of both crimes. Therefore, the trial court was in error in denying [Brown]'s motion for a directed verdict." *Id.*

In *United States v. Blue,* 957 F.2d 106, 107 (4th Cir.1992), a police officer conducting nighttime surveillance of a house for possible illegal drug activity saw two men leave the house and

enter a parked car on the street. The officer pulled the car over in a well-lit area to investigate a seatbelt violation. *Id.* While approaching the car, the officer saw the shoulder of the passenger "dip as if the passenger were reaching under the seat with his right hand." *Id.* After the driver and passenger exited the car, the officer searched the passenger for any weapons and "discovered a needle, a syringe, and a small amount of heroin, and therefore placed [the passenger] under arrest." *Id.* A consensual search of the car revealed a loaded gun under the passenger seat. *Id.* Both the driver and the passenger denied knowledge or ownership of the gun. *Id.* The car did not belong to the passenger, and no evidence was presented that the passenger had been in the car before. *Id.* at 108.

The passenger was convicted of possession of a firearm by a convicted felon. *Id.* at 106. On appeal, he challenged the sufficiency of the evidence to support his conviction. *Id.* at 107. To support its case, the government had relied on (1) the officer's testimony the passenger's shoulder dipped as he approached the vehicle and (2) the discovery of the gun under the passenger seat. *Id.* at 107–08. The Fourth Circuit determined this evidence was insufficient to support the passenger's conviction:

Beyond [the officer's] claim that he saw [the passenger]'s shoulder dip and the discovery of the pistol underneath the passenger seat, the government did not substantiate its case against [the passenger]. It did not produce fingerprints or any other physical evidence which would link [him] with the gun. The government introduced no evidence demonstrating that [the passenger] owned the gun or testimony that [he] had been seen with the gun. The car in which the gun was found did not belong to [the passenger]; in fact, no evidence indicated that [he] had ever been in that car before. Without more evidence than that proffered by the government, we cannot sustain [the passenger]'s conviction.

*Id.* at 108.

The *Blue* court further noted although the shoulder dip alone did not transform the passenger from a mere passenger in the car to a possessor of whatever was discovered underneath the seat in which he was sitting, "the facts of this case

fall outside, but just barely, the realm of the quantum of evidence necessary to support a finding of constructive possession." *Id.*

■ Although the State contends the center console was centrally located and thus within Jackson's dominion and control, Officer Montjoy testified the marijuana was "[u]nder the center console where the gear shifter is, the plastic housing there." Jackson did not own or rent the car; Davy provided it and was driving it. Additionally, Jackson and Davy had only met once previously, at Jackson's grandchild's birthday party. Although Officer Montjoy testified he smelled marijuana as soon as he approached the vehicle, an officer testified likewise in *Brown.* However, in *Brown* when officers found a large opaque bag containing eight pounds of marijuana on the rear floorboard, an officer's testimony he smelled marijuana and testimony the passenger was nervous were not enough evidence for the State's case to survive the passenger's directed verdict motion. Further, in *Blue* the officer testified the passenger made a shoulder dip and the gun was found under his seat in the car. However, this was not sufficient to sustain the passenger's conviction. Here, the evidence against Jackson is even less than in either *Brown* or *Blue.* The drugs were more out of sight, and the State presented no evidence that Jackson was nervous or made any suspicious movements. Accordingly, the State failed to present sufficient circumstantial evidence of knowledge to submit the case to the jury. Thus, the trial court erred in denying Jackson's motion for a directed verdict.

## II. Traffic Stop

Jackson contends the trial court erred in failing to exclude or suppress the stop by finding the officer had probable cause to believe the driver had committed a traffic violation. Because we find the trial court erred in failing to direct a verdict in favor of Jackson, we need not consider this issue. *See Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (providing an appellate court need not review remaining issues when its determination of a prior issue is dispositive of the appeal).

## CONCLUSION

Because the State failed to present sufficient evidence to establish Jackson had dominion and control over the marijuana, the trial court's denial of Jackson's directed verdict motion is

**REVERSED.**

SHORT and GEATHERS, JJ., concur.