270

743 S.E.2d 98

**The STATE, Respondent,**

v.

**Jo PRADUBSRI, Appellant.**

**Appellate Case No. 2010–153046**

**No. 5121.**

Court of Appeals of South Carolina.

Heard Sept. 10, 2012.

Decided May 1, 2013.

Rehearing Denied June 20, 2013.

272

Appellate Defender Dayne C. Phillips, of Columbia, for appellant.

Attorney General Alan McCrory Wilson, Chief Deputy Attorney General John W. McIntosh, Senior Assistant Deputy Attorney General Salley W. Elliot, Assistant Attorney General William M. Blitch, Jr., all of Columbia; Solicitor Donald V. Myers, of Lexington, for respondent.

KONDUROS, J.

In this criminal appeal, Jo Pradubsri contends the trial court erred in refusing to permit cross-examination of a witness, Melisa Martin, regarding her potential legal exposure from her initial charges prior to accepting the State's plea offer. We reverse and remand.

**FACTS**

As a result of numerous tips from a confidential informant (CI), the Lexington County Sheriff's Department (the Department) conducted a search and investigation into Pradubsri. The Department was also looking for Martin, who was known to be Pradubsri's girlfriend and living with him in Richland County. On November 9, 2008, Sergeant John William Finch of the Department received a call from Sergeant Bobby Dale, with the Irmo Police Department, informing him Pradubsri and his car were at a grocery store in Irmo. Sergeants Dale and Finch began surveillance at the store and observed Pradubsri and Martin exit the store and leave the parking lot in his vehicle. Because of previously gathered information, Sergeant Finch "was extremely confident" he would find illegal substances in Pradubsri's vehicle and initiated a stop soon after Pradubsri left the parking lot. Sergeant Finch noted the stop occurred around three in the morning. As he approached the car, he noticed Pradubsri and Martin making "furtive movements in the vehicle[,] as if they were talking."

He further stated Pradubsri's shoulders were shifting around and Pradubsri took quick glances in the mirror at him. When Sergeant Finch requested Pradubsri exit the vehicle, he saw a gun in the area between the driver's seat and the center console. He notified his backup officer, Sergeant Kevin Blake, who was also with the Department, of the presence of the gun and secured Pradubsri.

While securing Martin on the passenger side of the vehicle, Sergeant Blake found a clear plastic bag protruding from her waistband that contained a white rock-like substance. He then saw a second bag in her hand that contained a similar white rock-like substance, consistent with crack cocaine. A female officer was called to the scene to conduct a further search of Martin. The officer found additional rocks of what were determined to be crack cocaine in Martin's pants. Officers also found a silver handgun in Martin's purse. The officers inventoried the car, but did not find any additional drugs. Officers found more than $700 in cash on Pradubsri. Officers discovered a total of approximately sixty-eight grams of crack cocaine at the scene.

The Lexington County grand jury indicted Pradubsri of (1) trafficking crack cocaine in an amount of twenty-eight grams or more but less than one hundred grams, (2) possession with intent to distribute (PWID) crack cocaine within proximity of a school, and (3) unlawful carrying of a pistol. Martin was initially charged with the same crimes as Pradubsri, but in exchange for her testimony against him, the State reduced her charges to possession of crack cocaine and unlawful carrying of a pistol. After pleading guilty prior to Pradubsri's trial date, Mart

At trial, Martin testified that on the night of her arrest, she falsely told law enforcement the crack cocaine was hers when it was actually Pradubsri's. She admitted she wrote a letter to the Solicitor's office informing it she would testify against Pradubsri in exchange for a speedy plea and a more lenient sentence. She acknowledged that during her plea, she answered she was willing to testify during Pradubsri's trial. On cross-examination, Pradubsri attempted to elicit testimony regarding Martin's potential legal exposure for her initial charges had she not accepted the State's plea offer. The

State objected to this testimony as being irrelevant, but Pradubsri argued that pursuant to his right to confrontation under the Sixth Amendment, he was allowed to elicit this testimony from Martin. Further, Pradubsri contended case law supported his argument.

The trial court was concerned with Pradubsri's line of questioning because Martin was initially charged with the same charges as Pradubsri, and thus, if that testimony was allowed, the jury would be improperly informed of the exact sentence he was facing. The State agreed with the trial court. The trial court further explained the jury was not entitled to information regarding the length of potential sentences for Pradubsri's charges because other than in a death penalty setting, it is not to be concerned with sentencing. The trial court then held Pradubsri could ask Martin if she potentially had faced a substantial amount of time without the State's plea offer because that related to the issue of bias or prejudice. However, he could not ask about the specific length of the potential sentence for each charge. The trial court sustained the State's objection with those parameters.

Pradubsri resumed questioning about Martin's initial charges, asking if she faced "a significant amount of time on [them]." She responded affirmatively. Pradubsri then asked, "When you wrote the Solicitor, didn't you say that you would do what you could to receive a more lenient sentence?" Martin again responded in the affirmative. She also testified the State helped her receive a reduced bond. Pradubsri extensively cross-examined her regarding her prior drug use, her role in Pradubsri's drug activities, and her involvement in other illegal activities.

Pradubsri was convicted on all counts. The trial court sentenced him to thirty years' imprisonment for the trafficking charge, fifteen years for the PWID within proximity of a school charge, and one year for the pistol charge, which were all to run consecutively. This appeal followed.

**STANDARD OF REVIEW**

In criminal cases, this court only reviews errors of law. *State v. Baccus,* 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006). An appellate court is bound by the trial court's factual findings unless they are clearly erroneous. *Id.* "Admission of evidence

falls within the trial court's discretion and will not be disturbed on appeal absent abuse of that discretion." *State v. Colf,* 337 S.C. 622, 625, 525 S.E.2d 246, 247 (2000). "The scope of cross-examination is within the discretion of the trial judge, whose decision will not be reversed on appeal absent a showing of prejudice." *Id.* at 625, 525 S.E.2d at 247–48.

## LAW/ANALYSIS

### I. Cross–Examination of Martin

■ Pradubsri maintains the restriction on cross-examination regarding Martin's exact potential legal exposure prior to her acceptance of the State's plea offer violated his Sixth Amendment right to confrontation and was in contravention of our supreme court's decision in *State v. Mizzell,* 349 S.C. 326, 563 S.E.2d 315 (2002). We agree.

■ "The jury is, generally, not entitled to learn the possible sentence of a defendant because the sentence is irrelevant to finding guilt or innocence." *Id.* at 331, 563 S.E.2d at 318. "However, other constitutional concerns, such as the Confrontation Clause, limit the applicability of this rule in circumstances where the defendant's right to effectively cross-examine a co-conspirator witness of possible bias outweighs the need to exclude the evidence." *Id.* at 331–32, 563 S.E.2d at 318.

■■ "The Sixth Amendment rights to notice, confrontation, and compulsory process guarantee that a criminal charge may be answered through the calling and interrogation of favorable witnesses, the cross-examination of adverse witnesses, and the orderly introduction of evidence." *Id.* at 330, 563 S.E.2d at 317 (internal quotation marks omitted). "The Sixth Amendment is applicable to the states through the Fourteenth Amendment." *Id.*

■ "A defendant has the right to cross-examine a witness concerning bias under the Confrontation Clause." *Id.* at 331, 563 S.E.2d at 317. "On cross-examination, any fact may be elicited which tends to show interest, bias, or partiality of the witness." *Id.* (internal quotation marks omitted).

A criminal defendant may show a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to

show a prototypical form of bias on the part of the witness, and thereby to expose to the jury the facts from which jurors ... could appropriately draw inferences relating to the reliability of the witness.

*Id.* (alteration in original) (internal quotation marks omitted). However, "[t]he trial judge retains discretion to impose reasonable limits on the scope of cross-examination." *Id.* "Before a trial judge may limit a criminal defendant's right to engage in cross-examination to show bias on the part of the witness, the record must clearly show the cross-examination is inappropriate." *Id.* If the defendant establishes the limitation unfairly prejudiced him, the error is reversible. *Id.*

In *State v. Brown*, one of the State's chief witnesses was initially charged with trafficking cocaine, the same crime for which the defendant was on trial. 303 S.C. 169, 170–71, 399 S.E.2d 593, 593–94 (1991). The witness had been hired to transport cocaine from one city to another,· but when she arrived at the designated airport, she was apprehended by undercover agents. *Id.* at 170–71, 399 S.E.2d at 594. Cocaine was found in her suitcase, and she agreed to cooperate with law enforcement by staging a sting operation for her contact. *Id.* at 171, 399 S.E.2d at 594. She testified the person she contacted was the person who arranged their meetings, and when he arrived, law enforcement officers arrested him. *Id.* The State elicited testimony from the witness regarding her plea agreement; specifically, that in exchange for her testimony against the defendant, "she was allowed to plead guilty to one conspiracy charge for which she could receive a maximum sentence of seven and one-half years." *Id.* On cross-examination, she admitted her original charge of trafficking was reduced as part of her plea agreement. *Id.* When the defendant attempted to ask the witness about the potential sentence for trafficking in cocaine, the trial court sustained the State's objection. *Id.*

The South Carolina Supreme Court found the trial court abused its discretion and unfairly prejudiced the defendant in limiting the cross-examination of the witness. *Id.* It stated "[t]he fact [the witness] was permitted to avoid a mandatory prison term of more than three times the duration she would face on her plea to conspiracy is critical evidence of potential bias that appellant should have been permitted to present to

the jury." *Id.* Further, it found the witness's "testimony was a crucial part of the State's case since she provided the only evidence of defendant's knowing involvement in the drug transaction." *Id.* at 171–72, 399 S.E.2d at 594. Because the error unfairly prejudiced the defendant, our supreme court held the defendant's right to meaningful cross-examination outweighed the State's interest in excluding the evidence. *Id.* at 172, 399 S.E.2d at 594.

In *Mizzell,* the supreme court again analyzed the court's discretion in limiting cross-examination of witnesses regarding their initial legal exposure prior to making a deal with the State. 349 S.C. at 330–35, 563 S.E.2d at 317–20. The case involved the burglary of a home. *Id.* at 329, 563 S.E.2d at 316. No physical evidence was available to further the investigation, but officers recovered some of the stolen property from another individual's home after receiving a tip. *Id.* at 329–30, 563 S.E.2d at 316–17. The individual had purchased the items from the defendants and testified another man and woman were in the truck with the defendants when he bought the items. *Id.* at 330, 563 S.E.2d at 317. The State's chief witness testified he and his wife were the two other people in the truck and had been with the defendants at the victim's home. *Id.* He claimed the defendants kicked in the door and entered the home, then exited with the victim's items. *Id.* On cross-examination, the witness admitted the State originally charged him with the same crimes as the defendants, but the trial court only permitted questioning the witness in general terms about the sentence for those crimes. *Id.* Unlike in *Brown,* the witness in *Mizzell* had not made a plea deal nor pled guilty at the time of the defendants' trial. *Id.* at 332, 563 S.E.2d at 318. The witness did state "he 'could get a long sentence for these crimes.'" *Id.* at 334, 563 S.E.2d at 319. The court in *Mizzell* held:

> The fact the witness has yet to reach a plea bargain or been found guilty should not prevent the admission of such evidence. The lack of a negotiated plea, if anything, creates a situation where the witness is more likely to engage in biased testimony in order to obtain a future recommendation for leniency.

*Id.* at 333, 563 S.E.2d at 318. Further, the court found "a witness admitting he is subject to a 'long sentence' is quite

different from a witness admitting he could be sentenced to a maximum of life in prison, the sentence faced . . . if convicted of first degree burglary." *Id.* at 334–35, 563 S.E.2d at 319. Thus, it found the trial court committed a prejudicial error in restricting the defendant's cross-examination. *Id.* at 335, 563 S.E.2d at 320.

In *State v. Gracely,* 399 S.C. 363, 366, 731 S.E.2d 880, 881 (2012), the State investigated the sale of methamphetamine within a community. As a result, the State obtained a fifty-two count indictment against various individuals. *Id.* Count two of the indictment alleged Gracely conspired to sell " 'more than four hundred grams of methamphetamine.' " *Id.* To establish its case against Gracely, the State relied upon evidence presented "in the form of testimony from seven individuals also named in the [i]ndictment." *Id.* at 366, 731 S.E.2d at 881–82. Gracely attempted "to show the potential bias of each witness by presenting to the jury information regarding the significantly lighter sentences th[o]se witnesses received in exchange for their testimony." *Id.* at 366–67, 731 S.E.2d at 882. When Gracely questioned one of the State's witnesses about the mandatory minimum and maximum sentences for the initial charges he faced, the trial court instructed "the witnesses could be questioned about the maximum punishment, but not the mandatory minimum punishment, for those charges they had in common with Gracely." *Id.* at 367, 731 S.E.2d at 882. Several of the State's witnesses admitted to past criminal records. *Id.* at 368–71, 731 S.E.2d at 882–84.

The supreme court clarified its decision in *Brown,* stating, "The fact that a cooperating witness avoided a *mandatory minimum* sentence is critical information that a defendant must be allowed to present to the jury." *Id.* at 374–75, 731 S.E.2d at 886. Thus, the trial court erred in not allowing the jury to hear the mandatory minimum sentences the witnesses faced on their initial charges. *Id.* at 374, 731 S.E.2d at 886.

Here, the trial court allowed cross-examination in general terms about the sentence Martin faced under her original charges. On a first offense trafficking charge, she faced a mandatory minimum of seven years, but she only received eighteen months after pleading guilty to a lesser charge.[1]

---

1. Based upon her prior criminal history in the record, Martin would have faced trafficking in crack cocaine in an amount of twenty-eight

However, to avoid informing the jury of the exact sentence Pradubsri was facing, the trial court refused to allow Pradubsri to question her on the exact potential sentence of each charge. Pradubsri claimed the cross-examination regarding Martin's potential legal exposure was relevant to her bias and motive in testifying. Pradubsri's right to meaningful cross-examination outweighed the State's interest in excluding the evidence. Because the evidence was critical to showing Martin's potential bias, the trial court erred in refusing to allow that evidence into the record.

## II. Reversible Error

"[This court's] inquiry does not end upon finding the trial court committed an error in limiting the cross-examination...." *Mizzell*, 349 S.C. at 333, 563 S.E.2d at 318. "An error is not reversible unless it is material and prejudicial to the substantial rights of the appellant." *State v. Lee–Grigg*, 374 S.C. 388, 414, 649 S.E.2d 41, 55 (Ct.App.2007) (internal quotation marks omitted), *aff'd*, 387 S.C. 310, 692 S.E.2d 895 (2010). "A violation of the defendant's Sixth Amendment right to confront the witness is not *per se* reversible error if the error was harmless beyond a reasonable doubt." *Mizzell*, 349 S.C. at 333, 563 S.E.2d at 318 (internal quotation marks omitted). "No definite rule of law governs finding an error harmless; rather, the materiality and prejudicial character of the error must be determined from its relationship to the entire case." *Lee–Grigg*, 374 S.C. at 414, 649 S.E.2d at 55.

Whether an error is harmless depends on the particular facts of each case and upon a host of factors including:

the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and of course the overall strength of the prosecution's case.

---

grams or more, but less than one hundred grams, first offense. In 2009, at the time of the indictment in this case, the statute provided for a mandatory minimum of seven years, but no more than twenty-five years on that charge. S.C.Code Ann. § 44–53–375(C)(1)(2)(a) (Supp. 2005).

*Mizzell*, 349 S.C. at 333, 563 S.E.2d at 318–19 (internal quotation marks omitted).

"Harmless beyond a reasonable doubt means the reviewing court can conclude the error did not contribute to the verdict beyond a reasonable doubt." *Mizzell*, 349 S.C. at 334, 563 S.E.2d at 319 (internal quotation marks omitted). "In determining whether an error is harmless, the reviewing court must review the entire record to determine what effect the error had on the verdict." *Id.* (internal quotation marks omitted). Whether the improper introduction of "evidence is harmless requires us to look at the other evidence admitted at trial to determine whether the defendant's guilt is conclusively proven by competent evidence, such that no other rational conclusion could be reached." *State v. Brooks*, 341 S.C. 57, 62–63, 533 S.E.2d 325, 328 (2000) (internal quotation marks omitted); *see also Lee–Grigg*, 374 S.C. at 415, 649 S.E.2d at 55 (finding an insubstantial error not affecting the result of the trial is harmless when guilt has been conclusively proven by competent evidence such that no other rational conclusion can be reached).

In *Gracely*, in determining whether the error was harmless, the supreme court summarized *Mizzell* and the *Van Arsdall*[2] factors. 399 S.C. at 375–76, 731 S.E.2d at 886–87. It found that while the State's witnesses presented cumulative testimonies, they only corroborated the others' testimonies. *Id.* at 376, 731 S.E.2d at 887. The State presented no physical evidence tying Gracely to the scene of the crime, enhancing the importance of the witnesses' testimonies. *Id.* The court noted no other evidence linked Gracely to the indicted offense. *Id.* Our supreme court determined the trial court should have considered the witnesses' backgrounds when limiting Gracely's cross-examination. *Id.* at 377, 731 S.E.2d at 887. The witnesses in *Gracely* all had "significant involvement with illegal drugs and other criminal activities, and cooperated following arrest and the possibility of long prison terms." *Id.* Because the case was established on circumstantial evidence, which included the testimonies of witnesses "with such suspect credibility," the court decided a ruling "preventing a full picture of

---

2. *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).

the possible bias of those witnesses" could not be considered harmless. *Id.* Accordingly, it reversed and remanded the case. *Id.*

Here, the State based Pradubsri's trafficking charge on the theory of constructive possession. South Carolina's definition of trafficking crack cocaine includes: "A person . . . who is knowingly in actual or constructive possession or who knowingly attempts to become in actual or constructive possession of ten grams or more of . . . [crack cocaine] . . . is guilty of a felony which is known as 'trafficking in . . . cocaine base.'" S.C.Code Ann. § 44–53–375(C) (Supp. 2012). "To prove constructive possession, the State must show a defendant had dominion and control, or the right to exercise dominion and control, over the [drugs]. Constructive possession can be established by circumstantial as well as direct evidence, and possession may be shared." *State v. Jackson*, 395 S.C. 250, 255, 717 S.E.2d 609, 611 (Ct.App.2011) (alteration by court) (internal quotation marks omitted). "Where contraband materials are found on premises under the control of the accused, this fact in and of itself gives rise to an inference of knowledge and possession which may be sufficient to carry the case to the jury." *State v. Muhammed*, 338 S.C. 22, 27, 524 S.E.2d 637, 639 (Ct.App.1999) (internal quotation marks omitted). "Possession requires more than mere presence." *Jackson*, 395 S.C. at 255, 717 S.E.2d at 611–12 (internal quotation marks omitted). "In drug cases, the element of knowledge is seldom established through direct evidence, but may be proven circumstantially." *Id.* at 255, 717 S.E.2d at 612 (internal quotation marks omitted). "Knowledge can be proven by the evidence of acts, declarations, or conduct of the accused from which the inference may be drawn that the accused knew of the existence of the prohibited substances." *Id.* (internal quotation marks omitted).

In another *State v. Brown*, 267 S.C. 311, 317, 227 S.E.2d 674, 677 (1976), our supreme court reversed the denial of a defendant's motion for a directed verdict on a possession of marijuana charge. The defendant was a passenger in a car in which marijuana was found. *Id.* at 313–14, 227 S.E.2d at 675–76. The court noted the State presented no evidence as to (1) who owned the car, (2) whether the passenger and the driver had any special relationship, (3) whether the passenger used

or sold drugs, (4) whether the passenger recognized the smell of marijuana, (5) whether the driver and passenger were close friends, or (6) whether the driver and passenger had spent a substantial portion of the night together. *Id.* at 315–16, 227 S.E.2d at 676–77. The court also noted the bag of drugs was situated so that the passenger might not have seen it and it was opaque. *Id.* at 315, 227 S.E.2d at 676.

In *U.S. v. Blue*, 957 F.2d 106, 106–07 (4th Cir.1992), a police officer conducting nighttime surveillance of a house for possible illegal drug activity saw two men leave the house and enter a parked vehicle on the street. After the car began moving and was in a well-lit area, the officer stopped the vehicle to investigate a seatbelt violation, and while approaching, noticed the shoulder of the passenger "dip as if the passenger were reaching under the seat with his right hand." *Id.* at 107. After the driver and passenger exited the vehicle, the officer searched the passenger for any weapons and "discovered a needle, a syringe, and a small amount of heroin, and therefore placed [him] under arrest." *Id.* After searching the vehicle, the officer found a loaded gun under the passenger's seat. *Id.* Both the driver and passenger denied knowledge or ownership of the gun. *Id.* The passenger did not own the vehicle, and the government presented no evidence the passenger had been in the vehicle before. *Id.* at 108. The Fourth Circuit determined a passenger's shoulder dip alone did not transform him from a mere passenger in the car to a possessor of whatever was discovered underneath the seat in which he was sitting. *Id.* at 108. The court found "the facts of this case fall outside, but just barely, the realm of the quantum of evidence necessary to support a finding of constructive possession." *Id.*

Here, the Lexington County Sheriff's Office had been searching for Martin and Pradubsri due to previous tips from a CI. Pradubsri and Martin were in an ongoing relationship and had been together that night for at least a couple of hours before their arrests. Pradubsri owned the vehicle in which the drugs were located. Some of the drugs were found inside Martin's clothing, and a bag containing drugs was found in her hand as well. Sergeant Finch testified that when he made the traffic stop and approached Pradubsri's vehicle, he noticed the two inside talking and moving around, but never saw Pradubs-

ri with the drugs. Additionally, Pradubsri had a firearm and $700 in cash on his person.

In *Brown*, 303 S.C. at 172, 399 S.E.2d at 594, the court noted the State's chief witness was the only person who could testify as to the defendant's involvement in the drug transactions. Here, Sergeant Finch testified he pulled over Pradubsri's vehicle in which Pradubsri and Martin were located but he did not see Pradubsri with any drugs. Martin's testimony was the only testimony that indicated the drugs were Pradubsri's. The State failed to present evidence amounting to constructive possession of the drugs without Martin's testimony. They were all found on Martin's person. Only Martin's testimony demonstrated Pradubsri had constructive possession of the drugs. Accordingly, Martin's testimony was essential to the State's case. Therefore, the error in not allowing cross-examination regarding her exact potential sentence was not harmless.

## CONCLUSION

The trial court erred in restricting Pradubsri's cross-examination regarding Martin's potential legal exposure prior to her accepting the State's plea offer. That cross-examination should have been allowed pursuant to the Confrontation Clause because it would have shown a particular bias in Martin's testimony against Pradubsri. Further, the error was not harmless due to the lack of sufficient evidence to find Pradubsri constructively possessed the drugs without Martin's testimony. For the foregoing reasons, the trial court is

**REVERSED AND REMANDED.**

SHORT, J., concurs.

LOCKEMY, J., concurring in part, dissenting in part:

I concur with the majority that the trial court erred in restricting Pradubsri's cross-examination about the mandatory minimum sentence for Martin's initial charges. However, I respectfully dissent to the majority's reversal based upon a harmless error analysis. Even in light of our supreme court's recent decision in *State v. Gracely*, 399 S.C. 363, 731 S.E.2d 880 (2012), I believe distinguishing facts exist in this case to allow a finding of harmless error.

*Gracely* made clear a harmless error analysis is still applicable despite a trial court's improper restriction on cross-examining a witness about a mandatory minimum sentence stemming from initial charges prior to accepting a lesser plea offer. *Id.* at 375, 731 S.E.2d at 886. The court specifically found "[a] violation of the Confrontation Clause is not per se reversible but is subject to a harmless error analysis." *Id.* (citing *Delaware v. Van Arsdall,* 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)).

> Whether such an error is harmless in a particular case depends upon a host of factors.... The[se] factors include the importance of the witness's testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

*Id.* (quoting *Van Arsdall,* 475 U.S. at 684, 106 S.Ct. 1431) (emphasis omitted); *see State v. Graham,* 314 S.C. 383, 386, 444 S.E.2d 525, 527 (1994) ("The list of factors as set out in *Van Arsdall* is not exhaustive.").

First, I would distinguish this case from *State v. Mizzell,* 349 S.C. 326, 563 S.E.2d 315 (2002), and *State v. Brown,* 303 S.C. 169, 399 S.E.2d 593 (1991), because Martin was not the only witness placing Pradubsri at the scene of the crime. Our supreme court in *Mizzell* found it critical that the State's chief witness was the only witness able to place the defendant at the scene of the crime, and the complete lack of physical evidence at the scene of the crime served to greatly enhance the chief witness's testimony. *Mizzell,* 349 S.C. at 334, 563 S.E.2d at 319. Thus, it was unfairly prejudicial to restrict cross-examination of the State's chief witness as to his potential bias resulting from leniency in his sentence in exchange for his testimony against the defendant. *Id.* at 335, 563 S.E.2d at 320. Similarly, in *Brown,* the court noted the State's chief witness was the only person who could testify as to the defendant's involvement in the drug transactions. *State v. Brown,* 303 S.C. 169, 171–72, 399 S.E.2d 593, 594 (1991).

Unlike in *Mizzell* and *Brown,* a second witness in this case, also placed Pradubsri at the scene of the crime. Sergeant

Finch explained he had prior knowledge of Pradubsri's involvement in illegal activity. He stated his estimated two-month investigation led up to the arrest, and thus, he knew Pradubsri by appearance and name. Further, he was confident he had legal authority to pull Pradubsri over that night. Even without Martin's testimony, other witnesses testified regarding the details of the traffic stop and the amount of drugs found at the scene, making a substantial portion of Martin's testimony cumulative for purposes of the actual crime for which Pradubsri was charged.

In examining the overall strength of the State's case and the presence of evidence corroborating the witness's testimony, I note, as did the majority, that the State based Pradubsri's trafficking charge on the theory of constructive possession. I concur with the majority's recitation of South Carolina's definition of trafficking crack cocaine and the requirements of constructive possession; however, we disagree on the application of prior case law to the present facts.

In another case titled *State v. Brown*, our supreme court outlined the facts the State used to support its theory of constructive possession against Brown:

The sum total of the State's evidence against Brown is that he was a passenger in a car on a deserted rural road about 1:00 A.M., that Wolfe had an undetermined sum of cash in a large roll, that Brown was nervous and had no identification, that there was a smell of marijuana in the car, and that there was a large opaque bag containing eight pounds of marijuana on the rear floorboard. Wolfe knew Brown's name as Chuck Brown and Brown told Wolfe to be quiet when Wolfe started to admit the crime.

267 S.C. 311, 315, 227 S.E.2d 674, 676 (1976).

The court listed the deficiencies in the State's circumstantial evidence, stating

[t]here was no evidence adduced ... as to ownership of the car or any special relation appellant had with Wolfe or the owner from which Brown's control of the car or its contents might be inferred. The bag containing the marijuana was opaque and so situated that a front seat passenger might never have seen the bag, much less its contents. There was no evidence that Brown was a seller or user of drugs, or

that he even recognized the odor of marijuana; or that he was a close friend of the driver; or that he spent a substantial part of the night with him. Although Rogers testified he smelled the odor of burned marijuana he found no residue of such in or about the car of the defendant. *Id.* at 315–16, 227 S.E.2d at 676–77 (internal citations omitted).

In *State v. Jackson*, 395 S.C. 250, 258, 717 S.E.2d 609, 613 (2011), this court determined the State failed to present sufficient circumstantial evidence of knowledge to support the charge of constructive possession. The drugs were found under the center console of the vehicle where the gear shifter was located. *Id.* The defendant did not own or rent the vehicle, and there was another person driving it. *Id.* Furthermore, the defendant had only met the driver once previously. *Id.* While the officer testified he smelled marijuana when approaching the vehicle, he never testified as to any suspicious movement by the defendant. *Id.* This court evaluated two other cases, *State v. Brown*, 267 S.C. 311, 227 S.E.2d 674 (1976), mentioned previously, and *U.S. v. Blue*, 957 F.2d 106, 107 (4th Cir.1992), and found the State presented even less evidence against the defendant than in either *Brown* or *Blue*. *Id.* at 256–58, 717 S.E.2d at 612–13. It stated in comparison to those two cases, "[t]he drugs were more out of sight, and the State presented no evidence that [defendant] was nervous or made any suspicious movements." *Id.* at 258, 717 S.E.2d at 613. Importantly, the court noted *Blue* gave guidance regarding the threshold amount of evidence necessary to support a finding of constructive possession.[3] *Id.* at 257–58, 717 S.E.2d at 613.

In *Blue*, a police officer conducting nighttime surveillance of a house for possible illegal drug activity saw two men leave the house and enter a parked vehicle on the street. 957 F.2d at 106–07. The officer pulled the vehicle over in a well-lit area to investigate a seatbelt violation, and while approaching, noticed the shoulder of the passenger, Herbert Blue, "dip as if [he] were reaching under the seat with his right hand." *Id.* at 107. After the driver and Blue exited the vehicle, the officer

---

3. The charge at issue in *Blue* was constructive possession of a gun, however it is the theory of constructive possession remains the same despite the difference in the object that is being possessed.

searched Blue for any weapons and "discovered a needle, a syringe, and a small amount of heroin, and therefore placed [him] under arrest." *Id.* After searching the vehicle, a loaded gun was found under Blue's seat. *Id.* Both the driver and Blue denied knowledge or ownership of the gun. *Id.* Blue was not the owner of the vehicle, and no evidence was presented that he had been in the vehicle before. *Id.* at 108.

Blue was convicted, and on appeal, the Fourth Circuit found the government relied on the following evidence to support its case: (1) the officer's testimony that Blue's shoulder dipped as the officer approached the vehicle and (2) the discovery of the gun under the passenger seat. *Id.* at 107–08. In reversing Blue's conviction, the Fourth Circuit determined while the "shoulder dip alone [did] not transform Blue from a mere passenger in the [vehicle] to a possessor of whatever [was] discovered underneath the seat in which he [was] sitting ... the facts of this case fall outside, but just barely, the realm of the quantum of evidence necessary to support a finding of constructive possession." [4] *Id.* at 108.

Here, the Lexington County Sheriff's Office was conducting an on-going search for Martin and Pradubsri due to previous tips from a CI. Pradubsri was the owner of the vehicle in which the drugs were located. Pradubsri and Martin were in a relationship, lived in the same home, and had been together for at least a couple of hours on the night of the arrest. While some of the crack cocaine was found inside Martin's clothing, there was a clear, plastic bag containing crack cocaine as well, found in her hand, to which Pradubsri could have had full access, control, or dominion at any point. Sergeant Finch testified that when he made the traffic stop and approached Pradubsri's vehicle, he noticed the two occupants talking and moving around, allowing an inference that the two could have been attempting to hide the drugs. Moreover, Pradubsri had a firearm, as well as $700 in cash on his person. I believe the State presented a case distinguishable from *Brown* and *Jackson,* and that far exceeded the low threshold delineated in *Blue.* Importantly, I believe the State presented a case by

---

4. I recognize *Blue* is cited and discussed in the majority's opinion as well, and they adopt strikingly similar language from this dissent, but we come to different conclusions.

which a jury could have found Pradubsri guilty of constructive possession of the drugs, even without Martin's testimony.

Despite the restriction against questioning about Martin's exact potential legal exposure, Pradubsri was able to thoroughly cross-examine her on other points regarding her bias and credibility. She discussed the exact charges she faced before the State allowed her to plead to lesser charges in exchange for testifying against Pradubsri. She further stated there was "a significant amount of time" on her initial charges and admitted to writing a letter to the Solicitor essentially begging to do whatever she needed in exchange for a more lenient sentence. Another point of distinction in *Gracely*, as well as *Brown* and *Mizzell*, was the difference in the relevant mandatory minimums. Based upon her prior criminal history in the record, Martin would have faced trafficking in crack cocaine in an amount of twenty-eight grams or more, but less than one hundred grams, first offense. In 2009, at the time of the indictment in this case, the pertinent statute provided for a mandatory minimum of seven years, but no more than twenty-five years. S.C.Code Ann. § 44–53–375(C)(1)(2)(a) (Supp.2005). In *Gracely*, *Mizzell*, and *Brown*, the relevant mandatory minimum at issue was twenty-five years or more, a significant increase from a mandatory minimum of seven years.

Moreover, Pradubsri was able to cross-examine Martin regarding her statement at the scene of the arrest that the crack was hers, even though at trial, she testified it was owned by Pradubsri. During direct examination, she admitted a bench warrant was issued because she did not initially appear to testify at Pradubsri's trial after being subpoenaed. She testified she used crack cocaine every day during the time she dated Pradubsri and had an addiction to it. She also explained she previously operated an escort service. She had a substantial criminal record that was entered into evidence. Thus, the jury had ample reason to discount her testimony and credibility because she was obviously lying about the drugs at the scene of the arrest, trial, or both occasions. The record reflects other points of her credibility and bias were fully tested.

While the State's case against Pradubsri would have been harder to prove without Martin's testimony, I believe there was evidence for the jury to find him guilty of constructive possession of the drugs. Further, the weakness in the State's case without Martin's testimony is but one factor in determining the harmlessness of the error. There must be some credence given to the fact that our supreme court has left a multi-factor harmless error analysis intact. Although Justice Kittredge was referring to another legal issue, his quote is relevant under these facts as well: "[I]t may be a rare occurrence for the State to prove harmless error beyond a reasonable doubt in these circumstances. But these determinations are necessarily context dependent, and a categorical rule is at odds with longstanding harmless error jurisprudence." *State v. Jennings*, 394 S.C. 473, 482, 716 S.E.2d 91, 96 (2011) (Kittredge, J., dissenting).

After reviewing the factors provided in *Van Arsdall*, I would find the error in not allowing cross-examination regarding Martin's potential mandatory minimum sentence was harmless.